FIDELITY & DEPOSIT CO. *v.* NISBET, clerk, for use, *et al.*

1. Where a plaintiff, in whom the legal right of action existed, brought suit for the use of others, who were not named in the petition, but merely indicated therein by reference to a designated decree of the court, and the defendant demurred to the petition upon the ground that the names of the usees did not appear therein and no copy of the decree referred to was attached thereto, the overruling of the demurrer, if erroneous, was rendered harmless when the plaintiff, during the trial, amended the petition by inserting therein the names of the usees.

2. As the petition stated a cause of action in the plaintiff against the defendants, an objection to such an amendment upon the ground that there was not enough in the petition to amend by was without merit.

3. The unanimous decision of this court upon a question of law, arising upon a given state of facts, is, until reviewed and overruled, a precedent which must be followed in any subsequent case in which the same question is raised upon the same state of facts. The present case being a suit upon a receiver's bond, by the obligee therein against the principal and surety, and the surety having set up the same defense as that made by the receiver in the case of *Tindall* v. *Nisbet*, 113 *Ga.* 1114, and the facts depended upon to support it being the same as those upon which the receiver relied in that case, it follows that the decision then rendered by this court, in the contempt proceeding against the receiver, controls the main question presented in the case now in hand.

4. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it.

5. There was no error in striking, upon demurrer, so much of an amendment to an answer as was based upon a wholly untenable theory, even though the demurrer did not attack the amendment upon this precise ground.

6. As there was nothing in the defense set up which could prevent any of the usees from entering a retraxit and withdrawing from the case, it was not erroneous to allow one of them to do so.

7. Assignments of error alleging that, for specified reasons, the court erred in directing a verdict in favor of the plaintiff, so far as a named usee was concerned, are without merit when there was nothing in the defense set up which could have prevented a recovery by the plaintiff for the benefit of this usee. If any of these assignments of error was intended to raise the question whether this particular usee was estopped from recovering against the surety upon the receiver's bond, it is sufficient to say that the surety did not plead estoppel against such usee.

8. There was no error in directing a verdict for the plaintiff for the full amount sued for ; and if there was error in directing that the verdict should provide that such amount should be credited with the portion thereof to which the usee who had entered the retraxit would otherwise have been entitled, it was error of which the surety upon the receiver's bond could not complain.

Argued October 9, 1903.—Decided January 12, 1904.

Action on bond.     Before Judge Evans.     Bibb **superior court.** January 9, 1903.

*Guerry & Hall,* for plaintiff in error.

*N. E. Harris, C. P. Steed, John I. Hall, Anderson & Grace, Bacon, Miller & Brunson,* and *Hardeman, Davis, Turner & Jones,* contra.

FISH, P. J. In the view which we take of this case, it is not necessary to determine all the questions raised in the court below and presented here by the bill of exceptions; nor to state all the facts which are contained in the voluminous record. A full statement of the facts leading up to the present litigation will be found in the report which precedes the opinion in the case of *Tindall* v. *Nisbet,* 113 *Ga.* 1114. The main and controlling question in the case can be reached and decided without passing upon some of the minor questions made in the trial court, and by leaving unconsidered a considerable portion of the evidence for the plaintiff which was admitted over objections of the defendant who appears as the plaintiff in error here, the consideration thereof being rendered unnecessary by an agreed statement of facts which was introduced in evidence. The facts shown by the record which we deem necessary to an understanding of the decision we now make are as follows: On January 9, 1894, H. C. Tindall was duly appointed permanent receiver for the Macon Hardware Company. In the order of appointment he was required to make and file in the office of the clerk of the superior court of Bibb county a good and sufficient bond, in the sum of $25,000, conditioned for the faithful performance of his duties as receiver under the order and such other orders as might be passed in the case, the bond to be approved by such clerk. The order of appointment further provided that the receiver should deposit all moneys coming into his hands in four banks located in the city of Macon, viz., the Exchange Bank, the American National Bank, the Central Georgia Bank, and the Macon Savings Bank, the deposits to be divided among these banks, as near as might be, in the proportion that the amount due by the Macon Hardware Company to each bank bore to the whole sum due by it to all of them, provided that the banks would pay interest upon such deposits, if left for the space of six months, at the rate of five per cent. per annum; and that no checks should be drawn against such deposits except in the name of the receiver and countersigned by the judge presiding of the court, except that checks drawn for expenses might be drawn without being so coun-

tersigned, but all such checks should specify for what expenses they were drawn. The terms of this order as to the manner in which checks should be drawn against the deposits were reiterated by orders subsequently passed by different judges presiding in the case. Tindall executed this bond, the Fidelity & Deposit Company of Maryland (hereinafter called the Fidelity Company) becoming the surety thereon. On the 25th of March, 1901, Nisbet, as clerk of the superior court of Bibb county, and the obligee in this bond, brought suit thereon against the obligors therein, alleging that Tindall, as receiver, had in his hands, in the administration of his trust, the sum of $26,596.23, and that of this amount he had failed to account for the sum of $6,021.17, which had been adjudged and decreed by the superior court of Bibb county to be in his hands, and that he had failed and refused to account for or to pay this latter sum, although required so to do by the orders and decrees of the court. No answer appears to have been filed by Tindall.

In its answer the Fidelity Company denied the right and authority of the plaintiff to bring the suit, denied that the court had lawfully decreed that the plaintiff was entitled to recover any funds in the hands of the receiver, and denied that there were any such funds in the hands of the receiver at the date of the alleged decree of the court and at the time of the filing of the suit against the receiver. The answer further averred that there had been no accounting properly required of the receiver for the alleged fund, and that there had been no adjudication upon any proper proceedings of any amount or balance as against the receiver, and, for such reason, no suit could be legally brought against the Fidelity Company upon the bond on account of any alleged default of the receiver. It also denied that there had been any breach of the bond. It further averred that the receiver deposited the funds which came into his hands in the Exchange Bank, the American National Bank, the Central Georgia Bank, and the Macon Savings Bank, all of the city of Macon, dividing his deposits amongst said banks, as near as might be, in the proportions which the amount due by the Macon Hardware Company bore to the whole sum due by it to all of such banks, at interest at five per cent. per annum, etc.; that the order of the court expressly provided and commanded that no check should be drawn against such deposits ex-

cept in the name of Tindall as receiver, and countersigned by the presiding judge of the court; that the sum of money sued for was composed of portions of the money deposited in such banks and loaned to them under these provisions of the order of the court, and that none of said sum was ever drawn out or collected of these banks by the court, or by the receiver upon checks signed by him and countersigned by the presiding judge of the court; and that the entire sum sued for was still in the hands of these banks and still owing to the court and to the receiver as such and to the parties at interest in said cause, subject to be checked out or collected under order of the court, as provided in the order of the court. It alleged that the sum sued for, after being deposited in these banks, under the order of the court, went into their custody for the court and for the benefit of the parties at interest, and, at the same time, went out of the custody of the receiver, and that neither said sum nor any part thereof had since then come into the custody of the receiver as such, and that while said sum was in the custody of these banks the defendant Fidelity Company owed the court or the parties at interest no duty concerning the same upon its bond or otherwise; that the banks had never had the legal power to dispose of the same or any part thereof, or to pay up the loans made to them, or any part thereof, except under order of the court, or upon checks of the receiver countersigned by the presiding judge of the court, and that so far as the sum sued for was concerned these banks had not paid out the same, or any part thereof, under any order of the court, or upon any check of the receiver countersigned by the judge; that each of the banks was a party to the cause in which the receiver was appointed, as well as a depositary of the court as to said sum, and as such party and depositary had both constructive and actual notice of the orders of the court relative to such fund, and was bound thereby and liable to pay over the sum sued for as might be required by the court.

By an amendment to its original answer, the Fidelity Company alleged that the money for which the suit was brought was deposited with and loaned to the Exchange Bank, the American National Bank, and the Central Georgia Bank, pursuant to the orders of Bibb superior court, and upon the terms of such orders; that this money had never been withdrawn or collected from said

banks, pursuant to the orders of said court, but these banks still had and were liable for it and were bound to refund it as the court might direct, the amount thereof for which each bank was alleged to be liable being named; that, under the orders of the court, these banks became depositaries of the court, and became liable to pay to the court, or the receiver, or the creditors' of the Macon Hardware Company, or to the clerk of the court, or to any person or persons the court might designate, the balance of the money deposited with them by the receiver, which they had never paid over to the court or to any person authorized to receive such money, and that each of these banks should be required to pay the amount due by it, with interest, into court or to the parties entitled thereto, viz.: the usees of the plaintiff. There was a prayer that, to this end, each of these banks should be made a party to this particular case, should be served with a copy of the proceedings, and be required to pay over said sum to the court or its order. This amendment was allowed, subject to demurrer, and each of these banks required to show cause why the prayers of the amendment should not be granted. Subsequently each of these banks demurred to this amendment, and the demurrers were sustained to so much of the amendment as sought to make these banks parties defendant to the case; and the Fidelity Company excepted. At the trial the Fidelity Company demurred orally to the plaintiff's petition and moved to dismiss it, upon the ground that no usee was named therein, and because no copy of the decree referred to in the petition was attached, and because it did not appear in the petition, or in any exhibit attached thereto, who the usees were. The court overruled this demurrer, and the Fidelity Company excepted. Subsequently the court allowed the plaintiff to amend the petition by inserting the names of various parties as usees, among them being the American National Bank and the Central Georgia Bank; and to this ruling the Fidelity Company ex-excepted. After this amendment was allowed, the Central Georgia Bank filed a disclaimer of any interest in any recovery that might be had in the case, and asked to be dismissed as a usee-plaintiff from the case, and entered " a retraxit on so being dismissed from said case." The court granted the application, over the objection of the Fidelity Company, which thereupon excepted to this ruling. At the close of the evidence, " the plaintiff moved the court to di-

rect a verdict for the plaintiff for all of the usees whose names : had been inserted by amendment, including the American National Bank, but not including the Central Georgia Bank." The Fidelity : Company resisted this motion and moved the court to direct a verdict in its favor; "in so far as the American National Bank was concerned. The court granted the motion of the plaintiff, and overruled the motion of the Fidelity Company, and directed a verdict for the plaintiff for the principal and interest against the Fidelity Company, less the amount the Central Georgia Bank would be entitled to." The case is here on writ of error sued out by the Fidelity Company.

1. The right of action for a breach of the bond was in the plaintiff, Nisbet, as clerk of the superior court of Bibb county, and he could have brought the suit without naming any usee at all, or, so far as the defendants were concerned, he could have sued for the use of any person, or persons, whom he might designate to take the proceeds of the action, provided, in so doing, he did not cut the defendants off from any defense which they would otherwise have. *Burk* v. *Steel*, 40 *Ga.* 217 ; *Buffington* v. *Blackwell*, 52 *Ga.* 129 ; *Gilmore* v. *Bangs*, 55 *Ga.* 403 ; *Cross* v. *Johnson*, 65 *Ga.* 717 ; *Davis* v. *Baker*, 71 *Ga.* 33 ; *Richmond & Danville R. Co.* v. *Bedell*, 88 *Ga.* 591 ; *Terrell* v. *Stevenson*, 97 *Ga.* 570 ; *Joiner* v. *Singletary*, 106 *Ga.* 257 ; *Norcross Manufacturing Co.* v. *Summerour*, 114 *Ga.* 156. But as the plaintiff brought his suit for the use of certain judgment creditors of the Macon Hardware Company, who were not identified in the petition otherwise than by reference to a designated decree of the court, we are inclined : to think it would have been proper to sustain the demurrer, unless the plaintiff either amended his petition by setting forth the names of the usees, or by striking therefrom all reference to them. : A defendant might have a defense which he could set up against a usee but could not urge against the person in whom the legal right to sue existed ; and where the plaintiff sues for the use of another, it would seem the defendant is entitled to know who the usee is, and good pleading requires that he should not be compelled to look beyond the petition in order to ascertain this. But : if there were any error in overruling the demurrer, it was cured when the plaintiff subsequently amended his petition by setting forth the names of usees. The contention that he could not do

this over the objection of the defendant Fidelity Company is without merit.    The error assigned in the bill of exceptions is, that there was not enough in the petition to amend by.    There was a plaintiff, defendants, and a cause of action.   No more was needed to enable the plaintiff to amend his petition by naming the parties whom he chose to designate as usees.    As a matter of fact, however, the amendment merely made perfectly plain, on the face of the petition, the names of the usees, who were already indicated therein by reference to a designated decree of the court.

2.   During the progress of the trial, the parties to the case entered into the following agreement:    "It is agreed that the sum of $6,021.27, the principal amount in dispute in this case, is represented by checks to that amount drawn and signed by H. C. Tindall, as receiver of the Macon Hardware Company, upon the Exchange Bank, the Central Georgia Bank, and the American National Bank, without being countersigned by the presiding judge of the court, and without any special order being granted allowing the drawing of said checks; and that all of said checks were paid by said banks: the Exchange Bank to the sum of $2,901.53, the Central Georgia Bank $2,644.30, and the American National Bank the sum of —————; and that none of these checks had upon them any statement in reference to expenses; that said checks were paid by the several banks and charged to the account of the receiver in said bank; that said checks were drawn by the said Tindall, and that he appropriated the money so drawn to his own use and has never accounted for the same; and that the contention of the plaintiff was that the money so drawn was funds deposited in said banks by Tindall as receiver, while the contention of the Fidelity Company was that the money so drawn was not such fund, because, under the law and orders of the court, the money so drawn was not such fund but was the moneys of the banks."    This was agreed to unqualifiedly by all of the parties except the American National Bank, which did not object to any agreement made as to the other banks, but required proof as to itself, on the ground that it denied that it was a depositary.    The Fidelity Company thereupon introduced evidence for the purpose of showing that Tindall, as receiver, had drawn certain checks, which were not for expenses, and were not countersigned by the presiding judge, nor specially

allowed by order of the court, upon said bank, which were paid by the bank, and the amount so drawn from such bank by him.

The consideration and determination of this case are greatly simplified by this agreement, made in open court. In view of the admissions made by the Fidelity Company in this agreement, some of the questions raised in the court below and brought to this court for decision become immaterial. Here is an agreement which, in the light of the decision rendered by this court in *Tindall* v. *Nisbet*, 113 *Ga.* 1114, absolutely settles the main and controlling question made in the case. That question was, whether the money which Tindall, as receiver, drew from the Exchange Bank, the Central Georgia Bank, and the American National Bank, three of the banks in which he had been required, by order of the court, to deposit the receivership funds, upon checks signed by him as receiver, but not countersigned by the judge of the court, nor allowed by any special order of the court, and not for expenses, was part of the trust fund committed to his keeping, or merely funds of these banks paid out by them to Tindall, not as receiver, but as a private individual. This was the great subject of dispute in the case, the Fidelity Company having set up the defense that as the orders of the court provided that no money, except for expenses, should be drawn by the receiver from the funds deposited in bank, without the check for such money being countersigned by the judge, and as the banks had either actual or constructive notice of these orders, the money which Tindall obtained from them upon checks drawn by him as receiver, not for expenses and not countersigned by the judge, was no part of the receivership funds, and therefore, although Tindall appropriated it to his own use and failed to account for it, he committed no breach of his bond as receiver in so doing, and hence his surety on such bond was not liable. This very question, except as to the effect of its decision upon the liability of the surety on the receiver's bond, was made by Tindall in the above-cited case, and was there decided adversely to him and to the contention of the Fidelity Company in the present case. It was there expressly decided: " If a receiver has been directed by the court to deposit a fund arising from the sale of property of the debtor, in banks, subject to be withdrawn only on his check when the same has been countersigned by the judge presiding in the court which appointed him, and, in violation of

his duty and in disregard of the order of the court, the receiver obtains such funds from the banks, on checks not countersigned, and appropriates the same to his own use, then, regardless of the question whether or not the bank is liable for such wrongful payment, such receiver is in direct contempt of the court, whose officer he is, and he may be attached and punished for contempt in disregarding the orders of the court, and also for a failure or refusal, when so ordered, to pay into court the fund so misappropriated."

It will be seen, at once, that the decision was by no means confined to the question whether or not Tindall could be attached and punished for contempt in disobeying the orders of the court in reference to the manner in which the money should be withdrawn by him from the banks, but it expressly determined that he could also be attached and punished for contempt for his failure or refusal, when so ordered, to pay into court the funds which he had withdrawn from the banks upon checks not countersigned by the judge, and appropriated to his own use. This latter question was the main one in the case, for the trial judge had " made the rule absolute, requiring [Tindall] to pay at once to the clerk the sum [of $6,021.17]; and ordered that he be committed to jail for contempt of court, and remain in custody until he can show that he has purged himself of the contempt, by repaying the fund adjudged to have been misappropriated by him, and that he has been sufficiently punished, or by showing that he has been sufficiently punished and is unable, by reason of his poverty, to repay said amount." Ib. 1126. So, it is perfectly clear that in that case it was decided, both by the trial court and by this court, that the money which Tindall withdrew from the banks, upon checks signed by himself, as receiver, and not countersigned by the judge, and not for expenses, was a portion of the receivership funds. He could not have been punished for contempt of the court because he failed to pay into court money which he had obtained from these banks, unless such money, when received by him from the banks, was received in his capacity as receiver of the Macon Hardware Company and was receivership funds. It matters not whether the surety on the receiver's bond is or is not bound by the judgment rendered in that case. We may grant the contention of the Fidelity Company, so ably and forcibly presented here

by its learned counsel, that it is not bound by that judgment, and has the right now to make the same question which the receiver then made, and to invoke a ruling by this court, upon identically the same facts, directly opposed to the one which was then rendered. Still the fact remains that this court then unanimously decided, on the very facts established by the agreement of the parties in this case, as a matter of law, that the funds which Tindall withdrew from these banks, upon checks signed by him as receiver, but not countersigned by the judge, were receivership funds which he could be required to pay into court, and that upon his failure to do so, when so ordered by the court, he could be attached and imprisoned for contempt. It seems almost superfluous to say that when this court has, by a unanimous decision, decided the legal result of a given state of facts, it has established a precedent which, until the decision is reviewed and overruled, is bound to control any subsequent case in which the same question is presented on the same state of facts. If the legal effect of the facts established in Tindall's case was that he had misappropriated trust funds committed by the court to his keeping as receiver, the legal effect of these same facts, admitted by the surety, in the present case is that Tindall misappropriated such funds.

4. The bill of exceptions recites that "the decree of February 22, 1901, was offered in evidence, and the Fidelity Company objected to the same and offered then and there to show that the same was void because rendered by consent as contended by it; that the said decree was not accompanied by the record in the case or any part thereof. And the court . . overruled said objection and denied the Fidelity Company said privilege." "The Fidelity Company at the same time objected further, specifically to that part of the decree that fixed the amount of the liability of Tindall, on the ground that there were no pleadings to justify any findings, and because he had not been called upon to show cause or to make any account; the Fidelity Company claiming that for such reasons that part of the decree was not binding upon it; and the court overruled this objection also." Each of these rulings of the court is assigned for error. The plaintiff also offered in evidence the petition, the rule nisi, and the rule absolute in the contempt proceedings against Tindall. "The Fidelity Company objected on the ground that neither the petition, the rule nisi, nor

the rule absolute was plead or referred to as fixing the liability of Mr. Tindall or the Fidelity Company; and the court overruled the objection and allowed them all in evidence." This ruling is also assigned for error. We judge, from the record, that all of this documentary evidence was introduced before the introduction of the agreed statement of facts. It was certainly admissible in evidence for one purpose, if for no other, and the facts agreed upon render it unnecessary for us to decide whether or not it was admissible, as offered, for any other. It was admissible to prove the demand by the court upon its receiver for the principal sum for which the plaintiff sued. The decree, after finding that the receiver was chargeable with a stated amount and distributing a certain sum therefrom, adjudged that there was left in his hands $6,-106.26, which he was required to pay over at once to the clerk of the court. The rule absolute in the contempt proceedings adjudged that the receiver was in contempt of court, and that, from the evidence, he was properly chargeable with the sum of $6,021.17, for which he had failed and refused to account, and required him· to at once pay said sum to the clerk of the court. Whatever may have been the scope of the purpose of the plaintiff in offering these documents in evidence, and whatever merit, if any, there may have been in the objection urged by the Fidelity Company to them at the time they were offered, it is quite evident to us that, in connection with the agreed statement of facts, they were admissible in evidence, in so far as they established the fact that Tindall had been duly required by the court to pay over to the clerk of the court the amount of the receivership funds which he had wrongfully withdrawn from the banks and appropriated to his own use. They did, as we have just seen, establish this fact. If it were necessary for the plaintiff, in order to establish the breach of the bond, to prove any fact in addition to those contained in the agreed statement, it was this and this alone. After this agreed statement of facts was introduced, it mattered not under what pleadings, or upon what evidence, the court had found that Tindall had misappropriated funds committed to his keeping as receiver, and the amount of such funds for which he was liable. Independently of the court's findings upon this subject, the admitted facts establish the misappropriation of such funds by Tindall, the amount of such misappropriation, and the fact that he had

never accounted for the same. The decree of February 22, 1901, was also admissible for another purpose. It was certainly admissible for the purpose of showing the respective amounts due by the Macon Hardware Company to the plaintiff's usees. Clearly, as to this matter, it made no difference whether the decree was rendered by consent or not, as both the hardware company and these usees, its judgment creditors, were bound by it.

5. The court committed no error, of which the Fidelity Company can legally complain, in striking so much of the amendment to its answer as sought to have the Exchange Bank, the Central Georgia Bank, and the American National Bank made parties defendant to the case. It is immaterial whether this portion of the amendment was or was not subject to the demurrers filed by these banks respectively, as the Fidelity Company was not hurt by the action of the court thereon. We may say, however, in passing, that it was clearly subject to the demurrer of the Exchange Bank, which was in no sense a party to the case, not being one of the plaintiff's usees. The theory of the amendment was wholly untenable. It was the same as that of the original answer, with which we have dealt in discussing the main and controlling question in the case. The theory upon which the surety company based its defense, both in the original answer and this amendment, was, that there had been no misappropriation of the receivership funds by its principal, because the money which Tindall withdrew from these banks, in violation of the orders of the court, and applied to his own use, was not drawn from the funds deposited in the banks by him as receiver, but was money belonging to these banks which they had advanced to him and for which he was responsible to them alone; and that the funds for the recovery of which this suit was brought by the obligee in the bond were still on deposit in these banks, and they could be compelled to pay them into court. The purpose of the amendment was to have these three banks made parties defendant, in order that they might be compelled to pay into court money which they still held, on deposit, for the receiver. Now, we have seen that this court, upon facts the same as those presented in the present case, has decided that the receivership funds involved in this case have been withdrawn from these banks by the receiver and misappropriated by him. We have seen, also, that it makes no difference whether

the surety on the receiver's bond was or was not bound by this ruling, as the decision of this court upon a question of law, arising upon a given state of facts, declares the law applicable to the same state of facts in any subsequent case. It necessarily follows that these banks could not be held liable upon the theory that the funds alleged to have been misappropriated by the receiver are still in their hands.

6.    From what we have said in reference to the theory of the defense set up by the Fidelity Company, it follows that the court committed no error in allowing the Central Georgia Bank to enter a retraxit as to any interest in the sum for which the plaintiff sued, and to be dismissed as a usee-plaintiff from the case. The theory that this bank still had on deposit a portion of the funds for the recovery of which the suit was brought, or that the money which it had paid out on checks drawn by the receiver in violation of the orders of the court had not gone in extinguishment of the amount due to the receiver upon his deposit account, was, as we have seen, untenable.    Counsel for the plaintiff in error, in their brief, contend that the court erred in this ruling, because the Fidelity Company had pleaded, "in effect, set-off, and prayed for relief."    We do not think that it had pleaded set-off, or anything in the nature of set-off, against this bank, or against any other of the plaintiff's usees.    But, even granting that there was anything in its pleas which could be given such a construction, it is apparent, from its own showing, that there was nothing upon which it could base such a plea.    It had no claim of its own upon which to found a plea of set-off, for it had expended no money whatever in settlement of its liability upon the receiver's bond, and until it had done so, it certainly could have no claim against the bank.    Whether the Fidelity Company, after making good the loss occasioned by the malfeasance of its principal, would have any lawful claim against the banks which honored the improperly drawn checks of the receiver, is a question which does not arise in this case.    Nor did the Fidelity Company's principal, Tindall, have any claim against this bank upon which the surety upon his bond could base a plea of set-off, for, under the decision in *Tindall* v. *Nisbet*, supra, the payment of his checks by the bank went in extinguishment of the bank's liability to the receiver; otherwise it could not have been held that the money which the bank paid on these checks to

Tindall was receivership funds, for the misappropriation of which he was in contempt of court.

7.   There are several assignments of error in the bill of exceptions upon the rulings of the court on the motions in reference to the direction of a verdict.   It is unnecessary to deal here with those which are predicated upon the erroneous theory set up in the defendant's pleas, which we have already fully discussed.   One of the assignments is, that the court erred in directing a verdict in favor of the plaintiff, so far as the American National Bank was concerned, because the payment by this bank of the sum deposited with it by the receiver, upon the checks drawn by him in violation of the orders of the court, " was illegal and wrongful on the part of said bank, and the said bank, having thus illegally and wrongfully parted with such sum, had no right to retain or not account for the same and at the same time recover an amount of the Fidelity Company upon its bond, thus recovering from said company in effect an amount of money it had illegally and wrongfully disposed of in manner aforesaid, without the Fidelity Company's knowledge of the same, the said company being entirely without notice and without fault as to said transaction."   If this exception is intended to raise the question whether or not this bank was, as a usee-plaintiff, estopped from recovering against the Fidelity Company, it is sufficient to say that the latter did not plead estoppel against the bank.   It was nowhere alleged in the answer, or any of the amendments thereto, that this bank, or any other usee, was estopped from recovering against the Fidelity Company.   It would take a very strained construction of the answer, as amended, to find the doctrine of estoppel even hinted at therein. The Fidelity Company took the broad, and untenable, position that the plaintiff was not entitled to recover in behalf of any of the usees, because the money for which he sued was still on deposit in this and two other named banks, and was lawfully subject to the receiver's checks or to the orders of the court.   It fought the usees en masse and not in detail.   None of its pleas was directed against the specific interest of any particular usee, but its whole defense was based upon the theory that it was not liable at all, but the three banks were.   It did allege that the action of the banks in paying the checks in controversy was wrongful and illegal, but it pleaded this, not by way of estoppel against the banks named

as usees, but for the declared purpose of compelling the banks which had paid these checks to pay the amount of the receiver's alleged misappropriation into court, or to the judgment creditors of the Macon Hardware Company, and for this purpose it vainly sought to have these banks made parties defendant to the cause.

8. Another assignment of error is, "Because the court erred in directing the verdict as follows : for the plaintiff for the full amount sued for, principal and interest, for all of said usees, notwithstanding the Central Georgia Bank had, under order of the court, entered a retraxit in so far as its right of recovery was concerned, and for the credit of said unknown amount upon the verdict and judgment after the same should be ascertained." The court committed no error in directing a verdict for the full amount sued for; and if there was error in directing that the amount of the interest in such verdict which the Central Georgia Bank would have been entitled to, if it had not withdrawn from the case, should be credited on the verdict and judgment, it was error in favor of the Fidelity Company, and against the plaintiff. In our opinion, the plaintiff had the right to recover the full amount for which he sued. He did not sue for specific amounts in favor of the respective usees, but for one entire sum for all of them, and, notwithstanding the retraxit by this bank, he was entitled to recover the whole amount involved in the breach of the bond, if the same was not more than enough to settle the established claims of the remaining usees against the Macon Hardware Company. Had the plaintiff sued without naming any usees, he clearly would have been entitled to recover the full amount misappropriated by the receiver, in order that he might bring it into court for distribution ; and if the established claims against the Macon Hardware Company were not sufficient to exhaust the sum recovered, the balance would go back to such company. As he did sue simply for certain named judgment creditors of the hardware company, the fact that one of such usees disclaimed any interest in a recovery by the plaintiff simply enured to the benefit of the remaining usees, if their claims were sufficient to absorb the sum recovered ; in such an event, there would be simply more to divide among the remaining usees. As it is clear, from the evidence, that the amount for which the plaintiff sued was not sufficient to pay the usees remaining after the retraxit by the Central Georgia Bank,

the Fidelity Company was not injured, but benefited, by the verdict and judgment directed. If the amount to be credited upon the judgment can not be legally ascertained, the Fidelity Company is not hurt; for until it is ascertained and credited on the judgment, the judgment can not be enforced. We apprehend, however, that it can be mathematically and accurately ascertained by a calculation based upon the decree of February 22, 1901, and the judgment in this case.

         *Judgment affirmed.    All the Justices concur.*