32305. STANLEY *et al.* v. HUDSON.

GARDNER, J. (a) The defendant in error here, H. Q. Hudson, whom we shall call Hudson, sued Wilbur Stanley and A. Sidney Clark, plaintiffs in error here and defendants in the court below, whom we shall refer to as defendants and use their names as Stanley and Clark, when necessary to refer to them separately. The suit was brought by Hudson against the defendants for five percent commissions for selling Bulls Island to one Crossley for $45,000. There was no written contract between them. The jury returned a verdict in favor of Hudson for the amount sued for. An amended motion for a new trial was filed to the original motion by the defendants, and duly overruled by the trial judge of the City Court of Savannah. It is admitted by counsel for the defendants that the evidence sustains the verdict. It appears from the evidence for both sides that it is in some particulars in sharp conflict. It appears

that there were bad feelings between the parties. The defendants contend that Hudson was to sell the place for no commission at all, and they produced evidence other than their own to substantiate their contention. On the other hand, Hudson contended that he was to receive five percent commission, and introduced evidence other than his own to substantiate his contention. It is undisputed by either side that Hudson did bring Crossley, the purchaser, who lived in Cincinnati, Ohio, and the defendants together, and that he spent considerable time and went to the expense of $21.50 for telephone service. The jury believed the contentions of Hudson, and as stated, returned a verdict in his favor. At the time of the negotiations and sale, Hudson was living, and had lived for a long number of years, at Bluffton, South Carolina, and the defendants were living there also and sawing timber on the Island. We might mention here that one Beach was employed by the defendants while they were cutting the timber off the Island, and that Beach operated a store in Bluffton. He had been taking care of the Island for some 15 years before the defendants bought it. They employed him as captain of a boat which the defendants owned and used in taking supplies and men from Bluffton to the Island. Beach was a brother-in-law of Hudson. At the time of the sale of the Island by the defendants, Beach had located on the Island approximately 150 or 175 head of cattle, and he had had cattle on there since he had been looking after the Island. Crossley bought the Island for a hunting preserve. As conceded by counsel for the defendant, unless there is some error set forth in the special grounds of the amended motion, the case should be affirmed, otherwise reversed. We have set forth the evidence mentioned for the reason that it plays a part in the amendments to the motion for a new trial, which we shall refer to as the special grounds. The case was hotly contested by both sides, and if there was anything overlooked in the way of the introduction of testimony, or as to objections to an endeavor to introduce testimony which the court disallowed, we can not conceive of it. We will move to a discussion of the special grounds.

(b) The first special ground assigns error because the court refused to allow a witness for the defendants, Wilfred G. Butler, to testify that Hudson had been found in a house with a negro woman in a bed, where he had been with her for several days. It is contended that this evidence was admissible to show that Hudson was willing to sell the Island in order to deprive his brother-in-law Beach the opportunity of continuing to have cattle of Beach upon the Island, which contains splendid pasturage, and since there had arisen bad feeling between Beach and Hudson because of Hudson's having spent the time with a negro woman. So far as the record shows, Butler was an employee of Crossley in the capacity of superintendent of Bulls Island. He took this position with Crossley after Crossley purchased the Island. Prior to that time Butler had lived in Connecticut and had kennels at West Woodstock Farms there. So far as the record shows, Butler had never been to Bluffton until Friday, the day before Crossley came to look over the Island the next day, Saturday. So what he knew as to whether Hudson had associated himself with a negro woman was hearsay. For this reason

the court did not err in excluding the testimony. It is urged in this ground by the defendants that it was admissible to show the bad reputation of Hudson. Bad reputation can not be shown in this manner by specific acts. General bad reputation must be shown as a ground for unworthiness of belief. The record does not reveal, except from the defendants themselves testifying in their own behalf, that there was any bad feeling between Beach, the brother-in-law of Hudson, and Hudson. Beach married Hudson's sister. Beach was put on the stand by the defendants. When Beach was on the stand testifying, he stated that he did not know anything about the contract between his brother-in-law and the defendants. Beach did testify that. Hudson told him that he was not going to get anything out of selling the Island. This merely went to the credit of the witness Beach and was for the jury to decide. The jury decided against the testimony of Beach on this point. Beach further testified that, at the same time Hudson told him that he was going to sell the Island, he, Beach, "was on the lookout for me, and I had cows over there . . Mr. Hudson told me that he wanted to tell me so that I could get my cows off." The witness further testified that Hudson "told me he was going to sell Bulls Island so that I would be in a position to get ready to move the cattle; to take a while to move the cattle; that the people to whom he was going to sell it would pasture one end of the Island and plant the other." When Hudson was on the stand he testified that "there is no hard feelings between me and Mr. Beach that I know of. I had worked for him for a little while. I butchered for Mr. Beach for quite some time. He owns his home and a store there and he is a man of good standing and reputation there. Mr. Beach will take a drink once in a while. I have not seen Beach drunk, not lately. He is my brother-in-law and I was living there with him and I say he does not get drunk and I would know it if he did." We have a Code section on this question. Section 38-202 reads: "The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." But even then it must be the general character and not one specific act, as in the instant case. This seems to be a wise rule. We can readily discern that in the instant case, had the court permitted the evidence, then it certainly would be obligated to permit Hudson to put up testimony that it was not true. In such event the court would have found itself engaged in the trial of a foreign issue. This court held in *Mauldin* v. *Gainey*, 15 *Ga. App.* 353 (6) (83 S. E. 276): "As a rule the character of a party to a civil action is not an issue, and evidence thereof is not relevant." See also *Hughes* v. *Protestant Episcopal Church*, 137 *Ga.* 205 (73 S. E. 285). The court did not err in rejecting this testimony.

(b) Special ground 2 assigns error because the court refused to allow Beach, the brother-in-law of Hudson, to testify with reference to Hudson's relation with a negro woman. What we have said as to the first special ground, and the authorities cited, applies to this ground. The court did not err in rejecting this testimony.

(c) Special ground 3 reads: "Because the court refused to permit movants

to prove by Judge Victor H. Mulling that he had talked with the movants, Wilbur H. Stanley, one of the defendants and herein the movant, being his brother-in-law, and that he had advised them from the facts presented that they would not be liable under the facts to pay the plaintiff Hudson the amount he sued for, nor any other amount under the contract which they made with the plaintiff Hudson. This testimony was offered by movants and excluded by the court, and the ruling excluding the same was injurious to movants and that its exclusion was hurtful and prejudicial to movants because the court had permitted the plaintiff Hudson to testify that the movants had stated to him that they would 'spend the worth of Bulls Island, the $45,000, to see that I (Hudson) would not get a dollar out of it'; the evidence excluded tending on the contrary to show that they had acted in good faith in discussing the question with a person acquainted with the law, and that it was his advice they were following instead of the mean, nasty attitude indicated by the testimony offered by the plaintiff Hudson, thus explaining the conduct of movants in refusing to pay what the plaintiff (Hudson) demanded." It is contended by the defendants that the court committed reversible error in not allowing this testimony under the provisions of the Code, § 38-302, which provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence." It is contended that the evidence of Judge Mulling explained conduct and established motives on the part of the defendants. It is contended that it explained why the defendants below refused to pay the claim made upon them. Counsel for the defendants also in their original brief and in their reply cite numerous decisions in support of this special ground. They are: *Garrett* v. *State,* 157 *Ga.* 817 (1) (122 S. E. 211); *Moss* v. *Moss,* 147 *Ga.* 311 (3) (93 S. E. 875); *Fitzgerald* v. *State,* 10 *Ga. App.* 70 (4) (72 S. E. 541); *Stamps* v. *Newton County,* 8 *Ga. App.* 229 (9) (68 S. E. 947); *Southern Railway Co.* v. *Tudor,* 46 *Ga. App.* 563 (168 S. E. 98); *Burgamy* v. *Holton,* 22 *Ga. App.* 723 (97 S. E. 199); *Brown* v. *Matthews,* 79 *Ga.* 1 (4 S. E. 13); *Davis* v. *Stephens,* 45 *Ga. App.* 227 (164 S. E. 111); *Hearn* v. *Batchelor,* 47 *Ga. App.* 213 (170 S. E. 203). We do not think that either the Code sections or the authorities cited sustain the position of counsel for the defendants under the pleadings and facts of this record. In substance, the petition of the plaintiff claimed that the defendants owed him a five percent commission for the sale of the Island at $45,000, and that he complied with his contract, sold the property, and the defendants refused to pay him. The defendants in their answer denied that they were obligated to the plaintiff in any sum; and alleged that they did not agree to pay him any commission on the sale price of the property, and that Hudson stated to the defendant that he had earned no commission and was expecting none. This was the clear-cut issue before the jury. Counsel for the defendants in his reply brief on pages 9 and 10 states: "The record shows that the plaintiffs in error are men of good habits, industrious, and of good reputations, holding responsible positions of trust from the hands of their neighbors and associates of one of Georgia's

most progressive counties. It likewise indicates the defendant in error [Hudson] was a man of slovenly and questionable habits." It will be noted in this special ground that the defendants presented to Judge Mulling the same contention that they made in their answer. Of course, based on the defendants' contention, neither Judge Mulling nor any one else would likely advise the defendants to pay a claim. Just how would the opinion of Judge Mulling to his brother-in-law, Mr. Stanley, give the jury any light to guide them in finding a verdict? It was purely a jury question as to whether the defendants owed Hudson a commission or whether they did not. In view of the pleadings and the evidence in this case, we think the court did not err in disallowing testimony complained of in this ground.

(d) Special ground 4 assigns error on the ground that, after the jury had been empaneled and sworn and evidence had been introduced, the court on its own motion and without the consent or agreement of movants or their counsel, dismissed the jury and allowed them to separate and disburse on two occasions during the progress of the trial. In approving the motion for a new trial which contains this ground, the trial judge said: "But the additional fact must be noted that it is a legal custom known to the bar that juries in civil cases are dismissed during recess, and that learned counsel and the defendants were present and that no objection to the dispersal was made." It is the contention of movant that he did not object because he believed that it would be prejudicial to make such objection in the presence of the jury. This court in *Bragg* v. *State*, 15 *Ga. App.* 623 (1) (84 S. E. 82), said: "Unless prompt objection is made to an irregularity or impropriety in the progress of a trial, when known to counsel, it will be treated as having been waived." As appears from the certificate of the judge, and from the record, counsel for the defendants were present when the jury were dispersed. He made no objection then or thereafter or protest of any sort. See also *Johnson* v. *State*, 75 *Ga. App.* 186 (43 S. E. 2d, 119). This ground is not meritorious.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*

DECIDED FEBRUARY 24, 1949. REHEARING DENIED MARCH 23, 1949.

*Gilbert E. Johnson*, for plaintiffs in error.

*Robert E. Falligant*, contra.