A89A0430. WEAVER v. ROSS et al.
(386 SE2d 43)

Birdsong, Judge.

Appellees, the administratrix of the decedent's estate and the surviving children of the decedent, filed a wrongful death action against appellant doctor, another doctor, and a hospital authority. The latter two defendants reached a settlement with appellees and were dismissed from the lawsuit. The case proceeded to trial against appellant Weaver, and the jury returned a verdict of $722,847.13, which the trial court reduced by $50,000, the amount appellees received in settlement of their claims against the other two defendants. This appeal followed.

1. In their complaint, appellees alleged that appellant was negligent in failing to diagnose and treat their mother's malady as Rocky Mountain spotted fever, the disease which caused her death. Much testimony was elicited about the records appellant kept of the decedent's office visit.

During his cross-examination of appellant, appellees' counsel asked if appellant had ever written on a patient's chart that she had performed something for the patient when, in fact, she had not. Appellant's response was, "Not that I can remember." She was then handed a former patient's chart, not that of the decedent, to refresh her recollection and was asked if she had written a history and physical examination in a chart for a patient when she had not performed the history and physical examination. She replied that she had never done that and, when asked, affirmed that she had performed the physical exam and conducted the patient history of the patient whose chart appellees' counsel had given her. In a side bar, appellees' counsel expressed a desire to review the medical record with appellant, and appellant's counsel asserted to the trial court that appellees were bringing in a completely different case. Appellant made a motion in

limine to exclude further cross-examination of appellant regarding that or other alleged similar incidents, as well as the testimony of other witnesses called with regard to other alleged similar incidents. Appellant based her motion on the principle that a witness may not be impeached because of a discrepancy as to a wholly immaterial matter and that an unrelated act of alleged malpractice was immaterial to the issue being tried. The motion was denied on the ground that it was proper impeachment material. On rebuttal, appellees called the widow of the former patient who testified that appellant had not performed the physical exams and history on her late husband, contrary to appellant's written entry on the chart that she had.

Appellees maintain that the rebuttal evidence was admissible in response to appellant's introduction of evidence of her good character. "The general character of the parties . . . [is] irrelevant matter unless the nature of the action involves such character. . . ." OCGA § 24-2-2. " 'As a rule, the character of a party to a civil action is not an issue, and evidence thereof is not relevant.' " *Stanley v. Hudson*, 78 Ga. App. 834, 836 (52 SE2d 567). See also *Housing Auth. of Atlanta v. Green*, 169 Ga. App. 211 (3) (312 SE2d 196).

However, OCGA § 24-9-82 provides that the parties at trial may impeach a witness by disproving the facts testified to by him. In this instance, the physician testified on cross-examination that she had *never* written a history and physical examination in a chart *for a patient* when she had not performed the history and physical examination, and that she had examined and conducted the history relating to the particular former patient in question. On rebuttal, appellees called the widow of the former patient who testified that appellant had not performed the physical examinations and history on her late husband contrary to appellant's written entry on the medical chart. This evidence would rebut both of the above factual statements testified to by appellant. "The object of all legal investigation is the discovery of truth," OCGA § 24-1-2; it does not support this "prominent end" to construe the rules of evidence to provide a safe haven for witnesses to voluntarily give false or misleading testimony *in court.* The issue before us is controlled by the legal principles found in *Richards v. Harpe*, 42 Ga. App. 123 (1) (155 SE 85). Although the testimony to be directly rebutted initially was given during appellant's cross-examination as opposed to direct examination, these self-serving testimonial responses, if left unrebutted, would be *clearly corroborative* of factual contentions voluntarily advanced during her direct testimony specifically that she had *not* fabricated or reconstructed *any* of the entries made on the decedent's chart.

Control of the nature and scope of the cross-examination of a witness is a matter inherently within the discretion of the trial court and will not be controlled by an appellate court unless abused. *Sagon*

*v. Awtrey*, 173 Ga. App. 377, 378 (326 SE2d 566). If evidence can be duly admitted under any legitimate theory, it should be admitted even though it does not qualify for admission under one or more other evidentiary theories; that is, evidence should be admitted if it is admissible for any purpose. *Orr v. Dawson Tel. Co.*, 35 Ga. App. 560 (2) (133 SE 924); see *Wyatt v. State*, 206 Ga. 613, 616-617 (57 SE2d 914); *Fidelity &c. Co. v. Nisbet*, 119 Ga. 316 (4) (46 SE 444); see also 1 Wigmore on Evidence § 13, p. 694. And, a correct decision of the trial court normally will not be reversed regardless of the reasons given therefor. *Tony v. Pollard*, 248 Ga. 86 (1) (281 SE2d 557).

Applying the above legal principles to this case, we are convinced that the trial judge did not clearly abuse his discretion in this matter.

2. The day before trial, appellees released two other defendants in consideration of a payment of $50,000. The release stated that it was not for all the damages claimed by appellees and specifically exempted from its coverage the claims asserted against appellant. The two defendants were dismissed from the lawsuit, and appellant amended her answer to plead full satisfaction. A copy of the release and settlement, with the monetary amount concealed, was admitted into evidence, and the trial court gave the jury a charge almost identical to that discussed in *Ford Motor Co. v. Lee*, 237 Ga. 554 (2) (229 SE2d 379). The trial court concluded the *Lee* charge with the instruction that the jury was to find the total amount of damage and that the trial court would reduce the verdict by the unannounced amount appellees had received in settlement. Appellant contends the trial court erred in failing to submit the issue of full satisfaction to the jury.

In light of the Supreme Court's decision in *Posey v. Med. Center-West*, 257 Ga. 55 (354 SE2d 417), we must view a release given by a plaintiff to a co-defendant/joint tortfeasor differently than we did prior to *Posey*, In *Posey*, the Supreme Court abandoned the principle that a general release given to one joint tortfeasor releases all joint tortfeasors. That principle, previous to *Posey*, had been a distinguishing factor between a release (releases all joint tortfeasors) and a covenant not to sue (covers only the defendant who is a party to the covenant). See, e.g., *American Chain &c. Co. v. Brunson*, 157 Ga. App. 833 (278 SE2d 719); *City Express Svc. v. Rich's*, 148 Ga. App. 123 (4) (250 SE2d 867); *Ford Motor Co. v. Lee*, 137 Ga. App. 486 (224 SE2d 168), rev'd on other grounds, 237 Ga. 554, supra; *Pennsylvania Threshermen &c. Ins. Co. v. Hill*, 113 Ga. App. 283, 288-289 (148 SE2d 83); *Trice v. Wilson*, 113 Ga. App. 715 (2) (149 SE2d 530); *Atlantic Coast Line R. Co. v. Ouzts*, 82 Ga. App. 36, 56-57 (60 SE2d 770). Since *Posey*, a valid release of one tortfeasor by the plaintiff does not discharge other tortfeasors unless it is agreed that it will discharge them.

Nevertheless, we do not believe that there was *any* error as herein alleged. As previously noted, the charge given to the trial court was almost identical to that at issue in *Ford Motor Co. v. Lee,* supra. The Supreme Court in *Lee* held that "[u]nder the instructions given, the jury was to determine the amount of damages to which the plaintiff would be entitled without consideration of any amount previously paid. This is tantamount to an instruction to find the total amount of damages. . . . The trial court properly reduced the verdict by the amount previously received by the injured plaintiff from the joint tortfeasor. . . ." *Ford Motor Co. v. Lee,* supra at 556. While the Supreme Court's decision in *Posey v. Med. Center-West,* supra, vitiated the distinction between the effect of a release and a covenant not to sue with regard to the discharge of other tortfeasors, nothing in *Posey* renders nonviable the procedure approved in *Ford Co. v. Lee,* supra. See also *King Cotton v. Powers,* 190 Ga. App. 845 (380 SE2d 481). We conclude that the trial court properly handled the issue of the release of the other tortfeasors.

Moreover assuming arguendo error had occurred, we are satisfied it would be harmless. OCGA § 9-11-61.

3. In spite of appellant's assertions to the contrary, we are not persuaded that appellees' closing argument, addressing the jury as "the regulators of this community" and stating that the jury verdict "will go a long way in determining how doctors will treat their patients," was tantamount to an argument that the verdict should be used to punish the defendant. Compare *Gielow v. Strickland,* 185 Ga. App. 85 (1) (363 SE2d 278).

Moreover, assuming arguendo error had occurred, we are satisfied that based on the nature of the argument and the charges *as a whole* given to the jury *before* deliberation, any such error would be harmless. OCGA § 9-11-61.

*Judgment affirmed. Carley, C. J., Deen, P. J., McMurray, P. J., Banke, P. J., Sognier, Pope and Beasley, JJ., concur. Benham, J., dissents.*

BENHAM, Judge, dissenting.

I must dissent because I disagree with the majority's analysis and result in Division 1 regarding the admissibility of the evidence of appellant's fabrication of an entry on a patient's chart. Appellees offered the evidence in an attempt to disprove appellant's testimony that she had never written a history and physical examination in a patient's chart when she had not actually performed those tasks. While I agree that "[a] witness may be impeached by disproving the facts testified to by him," (OCGA § 24-9-82), "[a] witness is not to be discredited because of a discrepancy as to a wholly immaterial matter. [Cit.]" *Daniels v. Luton,* 40 Ga. App. 741 (1) (151 SE 659) (1930). "It is a

general rule that in a suit for negligence, evidence of similar acts or omissions on other and different occasions is not admissible. [Cits.]" *Thompson v. Moore,* 174 Ga. App. 331 (1) (329 SE2d 914) (1985). " ' " "[E]ach transaction must be ascertained by its own circumstances, and not by the reputation or character of the parties.' " ' " *Williams v. Naidu,* 168 Ga. App. 539, 540 (309 SE2d 686) (1983). "A witness' possible lack of credibility concerning matters otherwise irrelevant to any issue in dispute does not thereby become material to the case as an issue of impeachment. [Cits.]" *E. H. Siler Realty &c. Broker v. Sanderlin,* 158 Ga. App. 796 (1) (282 SE2d 381) (1981).

The issue at trial was whether appellant misdiagnosed the decedent's symptoms. Appellant's office chart on the decedent was the document from which the parties ascertained appellant's treatment of the decedent. When asked on direct examination whether she had fabricated or reconstructed any of the entries made on the decedent's chart, appellant responded that she had not. Appellees were then entitled to impeach appellant as to that statement by presenting evidence that appellant had fabricated an entry on the decedent's chart, but they did not do so. Instead, appellees impeached appellant's statement by presenting evidence that appellant had fabricated an entry on another patient's chart. Whether appellant fabricated an entry on the chart of another patient was wholly immaterial to the question of whether appellant misdiagnosed the decedent's symptoms and accurately entered her treatment of the decedent on the decedent's office chart. As such, it had no place as impeachment material in this trial. See *Daniels v. Luton,* supra; OCGA §§ 24-9-82; 24-9-83; 24-9-84. See also *E. H. Siler Realty &c. Broker v. Sanderlin,* supra.

The majority's reliance on *Richards v. Harpe,* 42 Ga. App. 123 (1) (155 SE 85) (1930) is misplaced, inasmuch as *Richards* permits *cross-examination* on the statements made on *direct* examination by the defendant physician. Also see *Johnson v. Myers,* 118 Ga. App. 773 (1) (165 SE2d 739) (1968). That is not what occurred in the instant case. Here, the information was not volunteered or otherwise brought out on direct examination, but the defendant was challenged on cross-examination for the first time on the issue of falsification of other patient's records. I believe that the judgment must be reversed due to the admission of inadmissible material, and so I respectfully dissent.

I also disagree with the majority's position in Division 2 that there was no error in the trial court's failure to submit the issue of full satisfaction to the jury. I find that error was committed, but that it was harmless. It is my opinion that with the change in the law created by *Posey v. Med. Center-West,* 257 Ga. 55 (354 SE2d 417) (1987), we are faced with a new issue: How will the release of a joint tortfeasor be treated in the trial against the unreleased defendants?

We begin with "the just principle that there should be but one

satisfaction of a single injury. Stated otherwise, in a tort action, compensation, and not enrichment, is the basis for the award of damages." *Atlantic Coast Line R. Co. v. Ouzts*, 82 Ga. App. 36, 58 (60 SE2d 770) (1950). Since *Posey*, supra, the co-defendant of a released defendant is in a situation identical to the co-defendant of a defendant who is a party to a covenant not to sue: the plaintiff has dismissed a defendant from the suit in exchange for an amount of money. Because the plaintiff is entitled to but one satisfaction, "if the manner of releasing one involves satisfaction in whole or in part of the claim, it will enure to the discharge, pro tanto, of all who are liable. . . ." Id. at 58. Thus, the remaining defendant, in an effort to reduce or avoid the plaintiff's right of recovery, may plead and prove the payment made. *Trice v. Wilson*, 113 Ga. App. 715 (2) (149 SE2d 530) (1966). See also *Ford Motor Co. v. Lee*, 237 Ga. 554 (2) (229 SE2d 379) (1976); *City Express Svc. v. Rich's*, 148 Ga. App. 123 (4) (250 SE2d 867) (1978); *Pennsylvania Threshermen &c. Ins. Co. v. Hill*, 113 Ga. App. 283, 289 (148 SE2d 83) (1966); *Malone v. City of Rossville*, 107 Ga. App. 271 (1) (129 SE2d 563) (1963); *Atlantic Coast Line R. Co. v. Ouzts*, supra at 59. In a post-*Posey* case, this court recently held that the failure of the remaining defendant to prove the fact of and the amount of the releases entered into by the plaintiffs and the other defendants precluded those settlement amounts from being used to offset the jury verdict rendered against the remaining defendant. See *Payne v. Jones & Kolb*, 190 Ga. App. 62 (378 SE2d 467) (1989). Therefore, while the jury in the case at bar was apprised of the fact of settlement, it should have been made aware of the amount appellees had already received from the former defendants. The question remains whether the failure to give the jury the required information constituted reversible error.

It was for the jury to determine, if it found for the appellees, whether appellees were entitled to additional remuneration from appellant in order to be fully compensated for the wrongful death of their mother. *Trice v. Wilson*, supra; *Pennsylvania Threshermen &c. Ins. Co. v. Hill*, supra at 290. This could have been accomplished by informing the jury of the amount appellees had already received as a result of the release and settlement, and by instructing the jury to reduce the total amount of damages, if any, by the amount already received. See, e.g., *Saint v. Ryan*, 114 Ga. App. 489 (151 SE2d 826) (1966). See also *King Cotton v. Powers*, 190 Ga. App. 845 (380 SE2d 481) (1989). The trial court's instructions to the jury that it disregard any dismissals from the action; that it determine the total amount of damages; and that the amount so found would be reduced by the amount of settlement effected the same result as would the procedure used in *Saint v. Ryan*, supra. Cf. *King Cotton v. Powers*, supra. I cannot and will not indulge in speculation as to how the jury's verdict

might have been affected by knowing the amount of settlement. Inasmuch as appellees were compensated and not enriched by the jury's verdict and the subtraction therefrom of the settlement amount, we perceive no harm. Therefore, I concur in the majority's result with regard to this issue, but not its analysis.

DECIDED JULY 14, 1989 —
REHEARING DENIED JULY 31, 1989 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Weymon H. Forrester, Lambert & Roffman, E. R. Lambert, for appellant.
Carter & Butt, James E. Carter, Eugene D. Butt, for appellees.