DeVORE, administrator, *et al. v.* BAXTER, executor.

1. While the clerk's certificate impliedly ascribes the failure to certify the record within the time prescribed by law, the facts stated by the clerk therein shows that the papers were filed in his office in sufficient time for him to make a transcript of the record and certify the same as the law prescribed. Accordingly, the motion to dismiss the writ of error is denied.

2. The evidence in this case being conflicting upon the material issues involved, it was error for the court to direct a verdict for the defendant.

3. The general rule is that estoppel, to be relied on, must be pleaded. Estoppel was not pleaded by the defendant; and it was error for the court, in directing a verdict for the defendant, to do so upon the ground that the plaintiffs were estopped from bringing and maintaining the suit.

4. The court erred in refusing a new trial.

No. 3137. February 16, 1923. Rehearing denied March 1, 1923.

Equitable petition. Before Judge Blair. Forsyth superior court. February 11, 1922.

When this case was formerly before this court it was stated and held as follows: "David DeVore and William DeVore as administrator of the estate of J. E. DeVore, deceased, filed a petition in Forsyth superior court, against A. M. Baxter (of Gwinnett County) as executor of the will of J. R. DeVore, deceased, alleging substantially, that J. E. DeVore was the father of both of the plaintiffs and of J. R. DeVore, that he died in 1914, in possession of designated lands in Forsyth and Milton counties; that Baxter, as executor of J. R. DeVoe, had filed a dispossessory and a distress warrant against D. W. DeVore, asserting that the latter was in possession of the premises as a tenant holding over; that counter-affidavits to both of these warrants were duly filed and the issues were pending in the superior court of Forsyth county; that William DeVore, as administrator of the estate of J. E. DeVore, deceased, was in possession of the land; that J. R. DeVore, deceased, had obtained a deed from his father, J. E. DeVore, by fraud and undue influence; and that J. E. DeVore was at the time insane and incapable of executing

a valid conveyance of the land. The prayers were, for process; that the two warrants be enjoined, and the issues arising thereon be determined in this suit; that the deed above mentioned be cancelled and declared of no force and effect; that the title to the land be quieted and be declared to be in William DeVore, as administrator of J. E. DeVore, deceased, for the purpose of administration and distribution. To this petition Baxter, as executor of J. R. DeVore, interposed a general demurrer on the grounds that the petition set out no cause of action, and because Baxter is a resident of Gwinnett county and the superior court of Forsyth county has no jurisdiction over him and no authority to enjoin the proceedings by distress and dispossessory warrants; and that the writ of injunction cannot be invoked to settle or dispose of legal proceedings of this character. The demurrer was sustained and the petition dismissed. The plaintiff excepted. A motion was made in this court to dismiss the bill of exceptions, because there had been no final disposition of the main cases against David W. DeVore (the distress and dispossessory warrants). *Held:* 1. The motion to dismiss the bill of exceptions is without merit, and is denied. 2. Where one sues out a dispossessory and distress warrant in a county other than that of his residence, and counter-affidavits are filed, thus transferring the issue to the superior court of the county where said warrants are pending, such person thereby submits himself to the jurisdiction of that county as to all matters included in such litigation. It was error, therefore, to dismiss the petition on the ground that the superior court of Forsyth county had no jurisdiction of the defendant. *Bedgood* v. *Carlton,* 145 *Ga.* 54 (88 S. E. 568); *Home Mixture Guano Co.* v. *Woolfolk,* 148 *Ga.* 567 (97 S. E. 637). 3. The petition set out a cause of action, and was not subject to general demurrer." *DeVore* v. *Baxter,* 150 *Ga.* 188. The above decision was rendered May 13, 1920. When the case was returned to the trial court the plaintiffs amended their petition on August 23, 1921, and alleged substantially that on or about February 11, 1889, J. E. DeVore borrowed $300 from Charles A. Mair, and gave a deed to secure the debt, DeVore remaining in possession of the property; and they supposed there was a bond for title. About 1900 the debt was unpaid, and there was an agreement of William DeVore, Warren

DeVore, Annie DeVore, and their mother to work and raise the money to pay off this debt. J. R. DeVore attended the medical college and commenced practicing medicine about the year 1901 or 1902. Previously to going to the medical college J. R. De- Vore had remained at home as one of the family, and had no property, and had none at the time he commenced to practice medicine. Annie taught school and earned money. William and Warren farmed on the place, and made some money. J. R. DeVore borrowed money to secure his education, and borrowed a horse to ride when he commenced to practice medicine; he was older than either William, Annie, or Warren and took the lead in so far as arranging the matter of the Mair debt, although at the time he had no money. " J. E. DeVore had great confidence in J. R. DeVore, and set great store by him by reason of the fact that he was about to be a doctor." So, about 1900, they began the undertaking to pay off the Mair debt under the management of J. R. DeVore. William paid J. R. DeVore on this debt $100 in cash, and took his receipt for it. Annie paid more than $100 in cash in 1900. Warren and his mother paid the remainder to J. R. DeVore in cash during that year; and under the arrangment J. R. DeVore was to pay off this debt. J. E. DeVore was under the complete control and domination of J. R. DeVore. It may or may not be true that J. E. DeVore transferred the Mair bond to J. R. DeVore to effect this arrangement; if so, it was without consideration, and the quitclaim deed from Mair to J. R. DeVore was without consideration, for the reason that there was no consideration for it, as the Mair debt had been paid and he had no title to convey, and whatever title Mair had was fully settled by the payment of the debt by William, Annie, Warren, and their mother, for J. E. DeVore and J. R. DeVore held the title after the payment of the debt to Mair without any title or interest that Mair had. From the time of making the Mair debt until the death of J. E. DeVore in 1914, the latter remained in possession of the property, and no claim was made against him or the property by J. R. DeVore, and the latter admitted that his brothers and sisters paid the debt as hereinbefore alleged. J. R. DeVore took his father's horse in 1901 to use in his practice; the horse was worth $100, and he never returned it; he also took in the same year a mule belonging to his father, worth $100,

and applied it to his own use and never paid for it; he took a milk-cow in 1901, worth $25, sold it, and never paid for it. J. R. DeVore admitted that he had no claim on the Mair debt; that William, Warren, Annie, and the mother had fully paid it off. At the time J. R. DeVore commenced practicing medicine his father was mentally weak and was an imbecile without business ability. J. R. DeVore dominated his father and assumed to manage his business affairs; he took charge of selling the cotton off the place, and gave his father such amounts as he saw fit; he made no claim to the ownership of the land; his father rented it out, farmed on part of it, and was in full possession; some of J. E. DeVore's other children, viz., Warren, Dave, and Annie DeVore, when she was not teaching school, worked on the land under the control and with the permission of their father. The recital in the deed signed October 24, 1913, that there wsa a consideration of $2,000, is false. J. R. DeVore paid no money at the time of the making of the deed, or at any other time; it is untrue that he paid the Mair debt. At the time of making the deed J. E. DeVore was non compos mentis; he was an imbecile and utterly unable to comprehend the obligations of making a contract. J. R. DeVore was intoxicated, had drunk whisky to excess, he dominated his father, could get him to do anything he wanted; and the deed is absolutely null and void. J. E. DeVore was a Confederate veteran, and as such drew a pension of $100 a year. J. R. DeVore collected this money from 1901, and never made any account of it to his father, in so far as plaintiffs know or are informed; and in so far as J. R. DeVore paid out money for J. E. DeVore he received much more from his father's pension money and from the sale of the cotton. William DeVore charges that the Mair debt was paid off and discharged as set out, and alleges that he offers to do equity, and that he paid on said debt the sum of $100 about the year 1900, and took a receipt therefor. J. R. DeVore recognized the Mair debt as a debt, and the transfer of the bond for title and the quitclaim deed from Mair was part of the arrangement to pay the debt as hereinbefore set out; " but if the court should determine to the contrary and that the same has not been fully paid, then this plaintiff stands ready, willing, and able to pay such balance amount as may be found to be due." After hearing evidence on behalf of the plaintiffs

and the defendant the court directed a verdict for the defendant. The plaintiffs made a motion for a new trial which was over-ruled, and they excepted.

George F. Gober, G. B. Walker, Clay & Blair, and H. B. Moss, for plaintiffs.

I. L. Oakes and J. P. Brooke, for defendant.

HILL, J. (After stating the foregoing facts.) After a careful examination of the entire record including the evidence intro-duced, pro and con, we are of the opinion that the evidence was so conflicting upon the material issues involved that the case should have been submitted to the jury under proper instructions from the court. In directing a verdict for the defendant the court prefaced his ruling with these remarks: "I do not think these plaintiffs are entitled to recover. In my opinion the case is controlled by the authority read by defendant's counsel. Further, it appears from the evidence that J. E. DeVore in 1901 made application for a pension and drew a pension from the State of Georgia as an indigent pensioner for thirteen years. If he owned the properties involved here, he practiced a fraud upon the State. It is charitable to his memory to say that he did not own them. The courts have held that when a fraud has been perpetrated upon the State, a court of equity will not lend its aid to assist one guilty of such conduct. The deceased would have been estopped by such conduct, and those claiming to hold under him are likewise es-topped from claiming property that he then disclaimed under his solemn oath." It will be observed that the trial judge placed his decision in directing a verdict solely upon the doctrine of estoppel; but it will also be observed from an examination of the record that estoppel was not pleaded by the defendant, and there is authority for the proposition that where estoppel is not pleaded it can not be taken advantage of by the defendant. Trice v. Rose, 80 Ga. 408 (7 S. E. 109); Tuells v. Torras, 113 Ga. 691, 698 (39 S. E. 455); Askew v. Amos, 147 Ga. 613 (95 S. E. 5); Irvine v. Wiley, 145 Ga. 867 (3), 868 (90 S. E. 69); Fidelity & Deposit Co. v. Nisbet, 119 Ga. 316 (7) (46 S. E. 444); Lynch v. Poole, 138 Ga. 303, 304 (75 S. E. 158). It appears from the record, not only that no plea of estoppel was filed, but that it was not urged by the defendants on the trial of the case; and the plaintiffs had no opportunity to meet such claim, for the reason

as contended by them that their first notice that estoppel was relied on as a defense was when the court announced, preliminary to directing the verdict for the defendant, that the plaintiffs were estopped from recovering in the case. But, assuming for the purposes of the argument that the defendant could take advantage of estoppel if it applied by reason of the ruling of the court below, we are of the opinion that the facts of this case do not make such a case of estoppel as would prevent the plaintiffs from bringing their suit and sustaining it by proof. Even if J. E. DeVore practiced a fraud upon the State by representing that he had no property in order to secure a pension, we do not see how this would estop the plaintiffs from asserting whatever right or title they might have in and to the property in question, both plaintiffs, and defendant claiming under a common grantor, J. E. DeVore. 10 R. C. L. 683, § 12.

As stated above, on the material issues in the case the evidence is conflicting. It is insisted on the part of the plaintiffs, that J. E. DeVore made a deed to Mair to secure a debt of $300, and took a bond for title from Mair to reconvey on the payment of the debt; that J. E. DeVore, and certain of his sons and his daughter, Annie, paid off this debt to Mair; that the deed executed by J. E. DeVore to J. R. DeVore in 1913 was without consideration; that at the time of the execution of the deed J. E. DeVore was an imbecile, and was insane from the effects of a stroke of paralysis, and was incapable, at the time of executing the deed, of understanding the nature of a contract; and that consequently the deed executed by him to his son was null and void. There is evidence to support these contentions. This evidence is controverted by the defendant's witnesses, who also testify that J. E. DeVore and those who hold under him were really holding under J. R. DeVore. The evidence being conflicting on the material issues of the case, it was error for the court to direct a verdict for the defendant.

The first headnote requires no elaboration.

*Judgment reversed. All the Justices concur, Russell, C. J., specially.*