## THE GEORGIA MILITARY INSTITUTE vs. SIMPSON.

1. The Georgia Military Institute can not be made chargeable through its Board of Trustees, when a contract, made with the Board of Visitors, the latter acting under a special delegation of power from the State, within the scope of their authority.
2. Is the Georgia Military Institute suable at all?   Query.

Complaint, in the Superior Court of Cobb county. Tried before Judge RICE, at the March Term, 1860.

On the 22d day of May, 1858, Leonard A. Simpson contracted and agreed with the Board of Visitors of the Georgia Military Institute, to construct and finish a building on the premises of said Institute, for the sum of forty-two hundred and fifty dollars.   The building was to be constructed and finished by a specified time, and in accordance with certain prescribed specifications.   The second and last items in the specifications are as follows, to wit:

"Bed of foundation, every part of it, to be two feet below the surface of the ground.   The foundation to be three bricks thick, to be laid with hard burnt bricks, in hydraulic mortar, and each course well grouted as high as one foot above the surface of the ground, or to the bottom of the joists of the first floor.

"The contractor to do such extra work as he may be called upon to do, and to receive pay therefor at the current price of such work in the town of Marietta."

The said Simpson employed Wallace and Eaves to do the brickwork of said building, and there were used in the building, about thirty thousand more bricks than the estimate which Wallace made.   Simpson bid for, and took the contract, with a knowledge of the ground on which the building was to be located, and Wallace made his estimate of the number of bricks which would be required in the building, with the specifications before him.

The ground or site of the building being an inclined plane, said Simpson, instead of making off-sets, which he might have done, dug down the higher part of the ground and laid the foundation deeper so as to make it level with the lower portion of the ground; and in doing this, and building steps

GOVERNOR AS A PARTY. "The Governor could not be made a party—being the head of a co-ordinate branch of the government, the courts may not well enjoin him—equity as well as law, would seem to forbid it.   The process of the courts is directed to the subordinate officers of the executive and those agents who are illegally using the

to the building, the extra bricks and work were used and done. Wallace and Eaves were of opinion that the extra work was necessary to make the building a complete and a good job. The Board of Visitors requested Col. Brumby and Captain McConnell to superintend the construction of the work, so far as to see that the contract was carried out, and the work done well. Colonel Brumby did not call upon said Simpson to do any of the extra work sued for, except the steps, and a blackboard. Nor does it appear from the evidence that Captain McConnell, or any one else, ever gave directions for said work to be done, although McConnell was frequently standing about and superintending, or looking at the work whilst it was progressing. Simpson received forty-two hundred and fifty dollars for said building, from the Board of Visitors, and the building was received by the Board of Visitors. Simpson gave a bond, payable to His Excellency, Joseph E. Brown, Governor of the State of Georgia, for the faithful performance of the contract.

Under this state of facts Simpson brought suit against the Georgia Military Institute, to recover three hundred and forty-eight dollars and forty-one cents, for 33,232 bricks, laid in hydraulic mortar; 1,667 bricks in the steps; setting stone steps; steps and hand-railing to lower door; scuttle-hole in the roof; and a blackboard for the upper room.

When the testimony (which consisted of the facts herein before detailed) had closed, counsel for the defendant moved a nonsuit against the plaintiff, on the following grounds, to wit:

1. Because the defendant was not liable to be sued in said action.

2. Because the proofs submitted by the plaintiff showed no contract entered into by the defendant, for the work sued for in said case, nor any liability on the part of the defendant to pay for the same; the contract proven having been made by, and with the Board of Visitors, who had no power to bind said Institute.

This motion was overruled by the Court, and counsel for the defendant excepted.

Counsel for the defendant then requested the presiding judge to charge the jury, "That if the plaintiff undertook and contracted to do a certain job of work, in a particular manner, and in accordance with certain specifications, and

authority of the State to oppress the citizens. The exceptions, if any, are few, when he can be brought to the courts officially at all. 8 Ga. 372; Code of 1895, §4877, Supplement to Code, 438; 25 Ib. 374; 31 Ib. 277; 37 Ib. 240; 43 Ib. 605; 45 Ib. 365." Mayo v. Renfroe, 66 Ga. 427.

for a particular sum of money, and it required more material than the plaintiff anticipated, to do the work in conformity with the contract and specifications, then the plaintiff is not entitled to recover for such excess of work or material."

This charge was given by the Court; but, in addition thereto, the Court charged the jury as follows: "The plaintiff insists that the work for which he claims pay in this action, was extra work; that is, that it was work done in the construction of a building, outside of, or beyond his contract. If the jury believe, from the evidence, that the plaintiff contracted to construct the building according to certain specifications furnished him, and that the plaintiff did do work in the foundation of the building, beyond what was mentioned in the specifications, and that the work so done was necessary to make the building a good and complete building, and that without such additional work in the foundation the building would not have been a good, secure, and complete building, then the work so done is to be regarded as extra work, and for that work, and for the material furnished in doing it, the plaintiff is entitled to recover what the same is proven to have been reasonably worth."

To this additional charge counsel for the defendant excepted.

The jury returned a verdict in favor of the plaintiff for three hundred and forty-eight dollars and forty-one cents, and defendant excepted.

The errors complained of in this case are:

1. The refusal of the Court to nonsuit the plaintiff.
2. The qualification or addition made to the charge requested by defendant's counsel.
3. The verdict of the jury as being contrary to evidence, the weight of evidence, and without evidence to support it.

IRWIN & LESTER and HANSELL, for the plaintiff in error.

SIMPSON & BLECKLEY, for the defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

The character of the Georgia Military Institute is some-

what amphibious. It was originally a private corporation. It was purchased by the State in 1857, and it is difficult to determine, now, what is its true character. It is purely a public corporation, bought with the funds of the State, and under its exclusive management and control. It has two Boards—a Board of Trustees and a Board of Visitors—and it is no easy matter to distinguish between the functions of the two. Some acts are performed jointly by both boards.

By the fourth section of the Act of 1857, it is declared: "There shall be a Board of Trustees, who shall exercise all the powers and faculties usually exercised by trustees of colleges." Does this subject the State, through this corporation to be sued? We think not. Special power was given to sue the Central Bank and the State Road. There is no such authority conferred as to this institution.

The suit was brought, in this case, against the Georgia Military Institute, and the trustees only were served. We are clear that this proceeding can not be sustained. The contract out of which this action originated was made with the Board of Visitors, and not the trustees.

By the third section of the Act of 1857 (*Pamphlet, p. 63*) the Board of Visitors are authorized and directed "to examine the Institute grounds and determine on the improvements necessary and proper for the objects contemplated by the Act, viz.: To provide, by law, for the military education and training of the youth of the State—contract for, and superintend the execution thereof; and as they are completed, and at different stages of their progress, to call for such part or parts of the appropriation, made by the Act, for this purpose, as shall be required for the payment of the same. And, in no case, shall an advance payment be made without ample security that the money shall be appropriated to the work; also, that the same Board of Visitors be paid a reasonable compensation for their service," etc.

The sum of $7,000 was appropriated for the purchase of the property, and the like sum for the improvements provided for in the section just quoted.

Thus, it will be seen, that the duty of making the necessary additions and improvements was expressly delegated to the Board of Visitors, as the special agents of the State; and that whatever other persons might belong to the Board of Trustees, that board had nothing to do with this busi

iness.   They were not only incapable of binding the Institute, but were wholly irresponsible to the contractor respecting it.

Under the authority of the Act, a contract was made with defendant, by the Board of Visitors, according to specifications.   And it is in proof that the job could have been done pursuant to the specifications, but it is also in testimony, to make it complete, additional work and materials were necessary; and it is for the extra work and materials—30,000 brick and the laying of them—that this action is brought.

It is insisted by the defendant in error, that Major Brumby and Captain McConnell were appointed by the Board of Visitors to superintend this work; that they witnessed its daily progress, and made no objections, although it is conceded they gave no positive consent about the matter.   It is not denied but that they were requested to interfere so far as to see that the work was properly executed under the contract, but they disclaim any authority to bind the board beyond that.

It is manifest, then, that the Georgia Military Institute, if suable at all, which we very much doubt, can not be made chargeable through the Board of Trustees, in this action.   It is equally plain that the Board of Trustees have incurred no personal liability, acting—as they did—as the agents of the State, and within the scope of their authority.   Nor can we comprehend very clearly how the Institute could be made chargeable through the Board of Visitors, upon this contract. Mr. Simpson made his estimates as though the site was a plane, where it is an inclined plane.   Hence the necessity of digging the foundation deeper upon the upper side, to horizontalize the foundation, or bring it to a level.   By resorting to off-sets, this could have been avoided, and the house built within the estimates.   But the building would have been less secure and complete.

The appeal, therefore, for compensation must be to the public authority, and not to the Courts.   We have no Court of Claims in this State, nor petition of right, as in England.   But whoever contracts with the State trusts to the good faith of the State, unless the State sees fit to disrobe iself of its sovereignty, as it has done in the law instance cited, to wit: *The Central Bank and the State Road.*

JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in not awarding a nonsuit in this case.