EDWIN J. PICKWICK *vs.* FRANCIS A. McCAULIFF.

Worcester.   October 3, 1906. — October 16, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence.   Joint Tortfeasors.   Release.   Commonwealth.*

If a civil engineer employed by the metropolitan water and sewerage commissioners, who is in charge of the work growing out of the construction of the Wachusett reservoir and whose duty it is to inspect all the work as it progresses, in the course of the performance of his duties is present, sitting with a masonry inspector on a derrick boom lying near and instructing the inspector in regard to the way in which his work is to be done, while the servants of one who has a contract with the Commonwealth for the construction of a masonry arch bridge over the Nashua River are engaged in erecting a derrick as a preliminary to the construction of the arch, and owing to the negligence of the servants of the contractor is struck and injured by the foot of the mast of the derrick swinging out as it is being hoisted into place, in an action against the contractor for his injuries, it cannot be ruled as matter of law that he was a mere volunteer or licensee or that he was not in the exercise of due care or assumed the risk of such an accident.

If a civil engineer, employed by a board of commissioners to take charge of and inspect certain work in behalf of the Commonwealth, while acting in the course of his duties is injured through the negligence of the servants of a contractor who has a contract with the Commonwealth for a part of the work of which he is in charge, and signs a paper agreeing in consideration of receiving his pay while absent from duty and being indemnified for hospital expenses and doctors' bills to make no claim upon the Commonwealth for the injury, this instrument has no effect to bar an action against the contractor for his injuries.

In order that the release of one of several joint tortfeasors shall discharge the others the person released must be capable of being sued for the joint liability.

The principle, that the release of one of several joint tortfeasors operates as a bar to a recovery against the others, has no application where the party released is the Commonwealth which cannot be sued as a tortfeasor.

TORT for personal injuries sustained on July 26, 1904, at West Boylston while the plaintiff was at work as a civil engineer and inspector for the metropolitan water and sewerage commissioners of the Commonwealth.   Writ dated January 14, 1905.

At the trial in the Superior Court before *Bell,* J. the following facts appeared in evidence :

Before the accident the defendant had been awarded a contract which provided for the construction of a masonry arch

bridge over the Nashua River near the village of West Boylston.
The plaintiff was the resident engineer in charge of this and all
other work at West Boylston growing out of the construction of
the Wachusett reservoir, and it was his duty to inspect all the
work as it progressed, and to inspect and approve the materials
used. As a preliminary to the construction of the masonry work
of the stone arch provided for in the contract it became necessary
for the defendant to erect a derrick near the point where the arch
was to stand, and the injury to the plaintiff occurred while the
derrick mast was being put in position by the employees of the
defendant.

During the forenoon of the day of the accident the plaintiff,
in the performance of his duties, had been inspecting the work
in neighboring localities. His first work in the afternoon was
to go with one McCauliff, the nephew and representative of the
defendant, to show him where suitable sand and gravel might be
had, the inspection of sand and gravel being one of the plain-
tiff's duties under the contract. The plaintiff then returned with
McCauliff to the vicinity of the arch, and there met one Allen,
a masonry inspector in the employ of the metropolitan water and
sewerage board, and began telling him where suitable sand and
gravel could be secured. While the plaintiff and Allen were
talking, McCauliff left them and went to the point where the
employees of the defendant were engaged in putting up the der-
rick, and shortly after went to the place where the hoisting engine
had been placed. The work of putting up the derrick was in
charge of one Goodrhue, a foreman in the defendant's employ.
The plaintiff and Allen first stood at a distance of about one
hundred and fifty feet from the point where the defendant's em-
ployees were engaged in putting up the derrick. The mast of
the derrick, to the top of which five guy ropes were attached but
which was not secured at the bottom, had been raised by means
of another derrick standing near by until the foot of the mast
dropped into the socket of the foot block, but in such a way that
the mast listed slightly from the vertical position. After the
mast had been raised to the position described above, the plain-
tiff and Allen approached somewhat nearer, the plaintiff still ex-
plaining to Allen what was to be done and the directions he had
just given to McCauliff with reference to sand and gravel.

The plaintiff testified that after talking with Allen his next duty was to inspect the work being performed by three laborers of the Commonwealth who were engaged in preparing the foundation for the bridge at a distance of some twenty-five or thirty feet from the hoisting engine and that after he and Allen had walked a short distance toward the bridge they sat down on the westerly end of the derrick boom, sixty-nine feet long, which was lying near by and was supported by timbers. This boom was about fifteen or eighteen feet away from the foot block, and it was about twenty-five feet from the foot block to where the Commonwealth laborers were working. While the plaintiff and Allen were sitting on the boom and discussing the way in which the work was to be done, the defendant's foreman, Goodrhue, gave the order " Just take a strain ; raise it a little — just an inch," and immediately thereafter the mast was raised clear of the foot block and swung toward where Allen and the plaintiff were sitting. Allen ran in one direction and the plaintiff in another. It all happened in an instant, and the plaintiff only had time to jump over the boom and take about two steps when the mast of the derrick struck the boom, knocking him down and breaking his leg.

The plaintiff testified that he was somewhat familiar with the raising of derricks and knew that it was a little dangerous, but that he thought that this derrick mast was substantially in place when he took his position on the boom, although he saw the defendant's servants prying the foot block. The only warning given was by the words " Just take a strain ; raise it a little — just an inch," and these statements were made immediately one after another.

Derrick experts testified that " Give it a strain " had a particular meaning among men familiar with the operation of derricks, and that it meant just to tighten the ropes, to put the power of the hoister through the ropes so as to relieve the pressure, and that it did not mean to lift the mast entirely out of the foot block, as was done in this case.

While the plaintiff was in the hospital, where he went immediately after his injury, he signed at the request of his superior officer, Charles E. Wells, the department engineer for the metropolitan water and sewerage board, who explained to him that it

was simply a matter of form and something the Commonwealth required from its employees whenever and however they were injured, the following paper:

" Metropolitan Water and Sewerage Board.
" Reservoir Department.
" Clinton, September 21, 1904.

" To whom it may Concern : —

" In consideration of receiving my pay while absent from duty on account of injury received while working at West Boylston Arch, and of being indemnified for necessary hospital expenses or doctor's bills, —

" I hereby agree to make no claim against the Commonwealth of Massachusetts on account of said injury.

" Edwin T. Pickwick.
" Witness    Charles E. Wells."

At the close of the evidence the defendant asked the judge to rule as follows:

1. That the plaintiff was not entitled to recover.

2. That there was not sufficient evidence to warrant the jury in finding that the plaintiff was in the exercise of due care.

3. That there was not sufficient evidence to warrant the jury in finding that the plaintiff did not assume the risk of an injury occurring under the circumstances disclosed.

4. That upon all the evidence the plaintiff must be held to have assumed the risk of an injury occurring as this did.

5. That upon all the evidence the plaintiff must be held to be a volunteer, and the only duty which the defendant owed him was not to be grossly and wantonly negligent.

6. That the instrument signed by the plaintiff bars him from recovery.

The judge refused to make any of these rulings, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $1,290.   The defendant alleged exceptions.

*J. R. Thayer, H. H. Thayer & J. H. McMahon,* for the defendant.

*R. A. Stewart, F. H. Nash & H. J. Hart,* for the plaintiff.

MORTON, J.   This is an action of tort for personal injuries sustained by the plaintiff on July 26, 1904, at West Boylston

while at work as a civil engineer and inspector for the metropolitan water and sewerage board.   There was a verdict for the plaintiff and the case is here on exceptions by the defendant to the refusal of the presiding judge to give certain instructions that were requested.   The instructions requested were in substance that on all the evidence the plaintiff could not recover, that he was not in the exercise of due care, that he assumed the risk, that he was a mere volunteer or licensee, and that a certain release given by the plaintiff to the Commonwealth operated as a bar to his recovery in this action.

Without reviewing it in detail we think that there was evidence of negligence on the part of the defendant.   There was testimony tending to show that there should have been guys on the bottom of the derrick or that it should have been steadied by hand, and the jury were warranted in finding, if they did so find, that the accident was due to failure on the part of those in charge of the work of setting up the derrick to use one or the other of these precautions.   The jury might also have found that there was negligence on the part of the engineer in regard to the manner in which he operated the engine.   One witness testified that he, the engineer, " opened the throttle of the engine ; he gave it a yank ; didn't intend to pull it out so far ; . . . if just a strain had been taken, no trouble would have happened.   An excessive yank caused the trouble."

It could not be ruled as matter of law that the plaintiff was a mere volunteer or licensee, or that he was not in the exercise of due care, or that he assumed the risk.   The defendant concedes that the plaintiff rightfully entered on the premises where the defendant's men were setting up the derrick.   If the jury believed the plaintiff, as they must have done, he was there in the performance of duties required of him by the nature of his employment under the contract between the defendant and the Commonwealth, and therefore was not a volunteer or licensee. And the jury properly could have found, and no doubt did find, that in sitting down on the boom, as he and Allen did, the plaintiff had no reason to apprehend any danger from the derrick, and therefore was not wanting in the exercise of due care, and did not assume the risk of the accident which occurred. *Mahar* v. *Steuer*, 170 Mass. 454. *McMahon* v. *McHale*, 174 Mass. 320.

The remaining question relates to the effect of the paper signed by the plaintiff agreeing, in consideration of receiving his pay while absent from duty and being indemnified for hospital expenses and doctors' bills, to make no claim upon the Commonwealth for the injury. We assume in favor of the defendant that the paper, though not under seal, operated as a release of any claim which the plaintiff had against the Commonwealth. It is well settled that a release of one of several joint tortfeasors will operate as a bar to a recovery against the others. But in order to have that effect we think that the party to whom the release is given must be one against whom an action would or might lie, and that a claim has been made for or on account of the alleged tort. It is not necessary that it should appear that he was in fact liable (*Leddy* v. *Barney*, 139 Mass. 394), or that there should have been concert of action amongst the alleged joint tortfeasors. *Stone* v. *Dickinson*, 5 Allen, 29. A gift from one of the joint tortfeasors will not operate to bar a recovery against the others. *Leddy* v. *Barney, supra.* There must be something in the nature of a claim on the one hand, and of possible liability under the rules of law applicable to the matter on the other, in order to render the release a bar to recovery against other joint tortfeasors. In the present case no action could have been maintained against the Commonwealth for the alleged injury. *Murdock Parlor Grate Co.* v. *Commonwealth*, 152 Mass. 28. It was not legally answerable in tort to the plaintiff or to any one, and besides, no claim was made by the plaintiff against the Commonwealth. What was received by the plaintiff from the Commonwealth must be regarded therefore as in the nature of a gift or gratuity, and not as something paid in satisfaction of an injury for which it was or might be liable according to established rules of law, or of a claim made upon it by the plaintiff.

*Exceptions overruled.*