32879.   ATLANTIC  COAST  LINE  R.  CO.  *et  al.  v.*  OUZTS,
by next friend.

Decided June 15, 1950.   Rehearing denied July 14, 1950.

40

41

44

50

*W. W. Alexander, S. Spencer Bennet, T. K. Vann Jr.*, for plaintiffs in error.

*Forester & Calhoun*, contra.

GARDNER, J.   (After stating the foregoing facts.) ■ Besides alleging a violation of an ordinance of the City of Thomasville limiting the speed of trains within the city to 20 miles an hour, which violation is negligence per se, the petition sets forth other acts of negligence against the defendant railroad.   It also alleges that the negligence was the proximate cause of the injuries to the plaintiff, who was a passenger in a taxicab proceeding over the crossing, and who was not shown by the petition to have been negligent in any respect.   The jury would have been authorized to find upon proof of the allegations of the petition that the driver of the taxicab was also negligent in attempting to cross the tracks with the train approaching, and while immediately behind another car without maintaining an interval of distance which would have permitted him to pass to the left or to the right if safety so required.   The following well-stated principles of law are applicable here:   "No general yet precise and inflexible rule can be laid down with reference to the highly involved and much discussed subject as to what constitutes the proximate cause of an injury.   Consequently each case must depend for solution upon its own particular facts; but it is a well-settled principle of law that where two concurrent causes operate directly in bringing about an injury, there can be a recovery against either one or both of the responsible parties.   The mere fact that the injury would not have been sustained had only one of the acts of negligence occurred will not of itself operate to define and limit the other act as constituting the proximate cause, for if both acts of negligence contributed directly and concurrently in bringing about the injury, they together will constitute the proximate cause.   [Citing]   The determination of questions as to negligence lies peculiarly within the province of the jury, and in the exercise of this function the question as to what constitutes the proximate cause of an injury complained of may be directly involved as one of the essential elements and disputed issues in the ascertainment of what negligence, as well as whose negligence, the injury is properly attributable to.   [Citing] · It was not error, therefore, for the judge to overrule the railway company's demurrer to the petition, since it was properly a question of fact, for the jury to determine from the evidence, whether the defendants were guilty of negligence in any of the particulars

charged, and, if so, whether the concurrent acts of negligence of both wrong-doers, or the separate acts of either of them, constituted the proximate cause of the injury." *Georgia Railway & Power Co.* v. *Ryan,* 24 *Ga. App.* 288 (100 S. E. 713). See also *McGinnis* v. *Shaw,* 46 *Ga. App.* 248, 250 (2) (167 S. E. 533); *Eidson* v. *Felder,* 68 *Ga. App.* 188, 191 (22 S. E. 2d, 523), and cit. Whether the alleged negligent acts of the defendants constituted the sole proximate cause of the plaintiff's injury, or concurred with the acts of the driver of the taxicab, which might be found to be negligent, as the proximate cause, or whether the sole proximate cause of the plaintiff's injury was the act of the driver of the taxicab in proceeding over the crossing under the circumstances stated in the petition, were questions for the determination of the jury. The petition set forth a cause of action against the defendants, and the trial court did not err in overruling the motion to dismiss.

■ One question raised by the assignment of error on the judgment sustaining the plaintiff's demurrer to paragraph 31 of the defendants' amendment to their answer is whether or not the instrument which the plaintiff executed to the taxicab driver, who under the allegations of the petition the jury might find was a joint tort-feasor, had the effect of barring the plaintiff from proceeding against the defendants. The defendants recognize that the instrument was by its express terms a covenant not to sue but contend that it was in substance a release. The plaintiff relies upon the provisions of the Code, § 20-909, that it is only the *equivalent* of a release and does not have the effect of barring the action against the defendants. That section provides: "A covenant never to sue is equivalent to a release; so also is a bond to indemnify the debtor against his own debt." This language first appeared in the Code of 1863 as § 2802, and was not based on any statute, but was what the codifiers conceived to be the common law, their commission under the act of 1858 (Ga. L. 1858,. p. 95), being to prepare a code which should embrace in a condensed form the laws of Georgia "whether derived from the common law, the Constitutions, the statutes of the State, the decisions of the Supreme Court, or the Statutes of England, of force in this State." It will be observed that the section does not provide that such a covenant shall be a release but is *equiva-*

*lent* to a release. Manifestly such distinction was not made without design. If it was intended that the covenant be in all respects a release, a much shorter statement would have been that it *is* a release. To construe the true meaning and efficacy of such a covenant not to sue we are, therefore, driven to the common law.

At common law, according to 8 Bacon's Abridgment, p. 249, at law a release of one joint debtor releases the other. This principle was evidently in the minds of the codifiers of the Code of 1863 when they chose to say "equivalent to" rather than to say is a release. It is expressed in the Code, § 20-910, and in *Ward* v. *Fleming*, 18 *Ga. App.* 128 (1) (88 S. E. 899); *Redpath Chautauquas Inc.* v. *Parks*, 33 *Ga. App.* 415 (126 S. E. 551); *Middlebrooks* v. *Phillips*, 39 *Ga. App.* 263 (146 S. E. 653); *Powell* v. *Davis*, 60 *Ga.* 70 (1); *Warthen* v. *Melton*, 132 *Ga.* 113 (4) (63 S. E. 832). In the following cases a release was taken from one joint tort-feasor and it was held that the other tort-feasor was released: *Edmondson* v. *Hancock*, 40 *Ga. App.* 587 (151 S. E. 114); *Caplan* v. *Caplan*, 62 *Ga. App.* 577 (9 S. E. 2d, 96); *Donaldson* v. *Carmichael*, 102 *Ga.* 40, 42 (29 S. E. 135).

What was the significance at common law of a covenant not to sue and which the codifiers of the Code of 1863 evidently meant to retain? In 8 Bacon's Abridgment, p. 249, it is stated: "If two are jointly and severally bound in an obligation, and the obligee by deed (a) covenants and agrees not to sue one of them; this is no release, and he may notwithstanding sue the other." In Garnett *v.* Macon, 2 Brockenbrough 185, being a collection of cases decided by Chief Justice Marshall of the Supreme Court of the United States while presiding in the Circuit Court of the United States for the District of Virginia and North Carolina, it was said: "I think the proposition may be stated, without fear of its being disproved by the books, that a covenant containing no words of release, has never been construed as a release, unless it gave to the party claiming that construction, a right of action, which would precisely countervail that to which he was liable; and unless, also, it was the intention of the parties that the last instrument would defeat the first." On page 223 the Chief Justice refers to Hutton *v.* Eyre, 6 Taunton 289, where the defendant, one of two partners, executed an

assignment of all his property to trustees for the benefit of his creditors, in consideration of which the creditors covenanted and agreed with the debtor not to sue him on account of any debt due to them from him, and quotes with approval from Lord Chief Justice Gibbs, who delivered the opinion in the Hutton case, as follows: "We must look at the principle on which the rule has been applied, that a covenant not to sue shall operate as a release. Now, where there is only A on one side, and B on the other, the intention of the covenant by A not to sue B, must be taken to mean a release to B, who is accordingly absolutely discharged from the debt which A undertakes never to put in suit against him. The application, therefore, of the principle in that case, not only acts in prevention of the circuity of action, but falls in with the clear intention of the parties; but, in a case like the present, it is impossible to contend that, by a covenant not to sue the defendant, it was the intention of the covenantors to release the plaintiff who was able to pay what his partner might be deficient in. It would have been an easier and a shorter method to have given a release than to make this covenant. The only reason, therefore, for their adopting this course, was, that they did not choose to execute a release to the defendant, because that would also have operated as a release to the plaintiff, whereas they considered that a bare covenant not to sue the defendant, would not extend to his partner; as, therefore, the terms of the covenant do not require such a construction, and as such construction would be manifestly against the intention of the parties, we are decidely of opinion that it ought not to be permitted so to operate." Chief Justice Marshall comments: "That this was not a joint obligation, but a joint assumpsit, constitutes, I think, no difference in the cases."

In *Kendrick* v. *O'Neil*, 48 *Ga.* 631, the Supreme Court had under consideration the legal effect of a certain receipt which was executed by a creditor through his agent to a member of a partnership and reciting that in consideration of a named sum paid by the partner the creditor did "hereby covenant and agree that the other partners shall and will duly pay the balance due on said obligation, without further cost or detriment to said" partner. In this case the court examined a code section which is now § 20-909, and, while ruling that the instrument was not a

covenant not to sue and was not a release, entered into a discussion of the legal effect of a covenant not to sue. Since, however, the writing there under consideration was not a covenant not to sue, what was there said as to the legal effect of such a covenant was obiter and is not binding upon this court. We nevertheless avail ourselves of the examination made by the court as to the legal effect of such a covenant at common law, from which it is apparent from the quotation by it from Garnett *v.* Macon, which we have set out hereinbefore, and other citations, that a covenant not to sue, executed to one of two or more joint tort-feasors, is not a release as to the others and does not bar a proceeding against them. There is no precise ruling by the Supreme Court of this State on the question here presented, but in *Georgia Railroad Co.* v. *Roy,* 147 *Ga.* 349 (94 S. E. 218), there is an implication that had the question been ruled on the Supreme Court would have held as we do here. The employer of one killed by a railroad obtained an express release from the plaintiff. In a suit against the railroad, discharge was pleaded on the ground that the plaintiff had executed a release to the employer as a joint tort-feasor. The plaintiff applied to the employer for a voluntary reformation of the instrument into a covenant not to sue. The contract was thus reformed and pleaded in the city court and the plea was rejected. At that stage of the litigation the plaintiff sought in the superior court to enjoin the defendant from interposing the alleged release as a defense in the city court, for reformation in accordance with the voluntary reformation by the employer, and that the controversy pending in the city court be tried and determined in the superior court, and that plaintiff have judgment. The Supreme Court, in holding that there was nothing for a court of equity to do, said: "The primary purpose of the equitable proceeding is to reform the release. Without this it is manifest, and indeed must be conceded, that the suit would be barren and purposeless; for in other respects it can be tried as favorably to the plaintiff in the tribunal first selected as in the last. Without reformation the paper would be as fatal to the recovery in the one court as in the other; and therefore, unless the reformation can be had, there is no basis for the equitable jurisdiction of the superior court. The paper having been voluntarily reformed already in accordance with the original intention

of the parties, a court of equity could do no more than has been done." It is clear that the Supreme Court was of the opinion that as a release the instrument would bar a proceeding against the remaining joint tort-feasor, but that as reformed into a covenant not to sue it would not do so. It must be observed that the court was addressing itself to the instrument sought to be reformed in equity and as it was when the defendants contended it was a release to a joint tort-feasor. The court, apparently without considering that the employer was other than a tort-feasor, decided that voluntary reformation having taken place no reformation in equity was needed. Had it been considering the instrument as reformed, wherein it was shown that the payment made by the employer was a mere gratuity, it would doubtless have held that such gratuity could not be pleaded in reduction of the amount of the recovery. See *Nashville, Chattanooga &c. Ry. Co.* v. *Miller,* 120 *Ga.* 453 (47 S. E. 959, 67 L. R. A. 87, 1 Ann. Cas. 210); *Western & Atlantic R. Co.* v. *Sellers,* 15 *Ga. App.* 369 (83 S. E. 445). Nevertheless, as written there is an implication that the court regarded a payment by one of two *joint tort-feasors* as one which could be pleaded in reduction of the amount of damages in a suit against the other tort-feasor.

In *Roy* v. *Georgia Railroad & Bkg. Co.,* 24 *Ga. App.* 86 (100 S. E. 46), the same case was before this court, involving, among other things, the legal effect of the covenant not to sue, and it was held, without citation of any precise authority, that "A covenant not to sue one jointly liable will not serve to release any one other than the one with whom the covenant not to sue is entered into." However, the opinion took note of the proceedings in the Supreme Court as reported in 147 *Ga.* 349, supra, and what was there said was doubtless the basis of the ruling of this court. In any event the ruling expresses the legal significance of a covenant not to sue as is to be found in the common law to which we have referred to determine the meaning of "equivalent to a release" in the Code, § 20-909.

In *Moore* v. *Smith,* 78 *Ga. App.* 49 (50 S. E. 2d, 219), it was held: "The release from liability, for a consideration, of one of two defendants sued jointly releases the other, for there can be but one satisfaction of the same claim for damage or injury;

but, to the contrary, where as here, the clear intendment of the agreement between the plaintiff and the dismissed defendant is but a covenant not to sue and not an accord and satisfaction of the claim itself, the other defendant is not released." This ruling was apparently induced by what was said in the *Kendrick* case, supra, quoted in the *Moore* case, and which was obiter as to a covenant not to sue, but it nevertheless states a sound principle of law in view of what an examination of the common law shows the legal effect of a covenant not to sue to be. See also, as showing the weight of authority to the effect that a covenant not to sue one of two joint tort-feasors is not a release of the other: Annotations in 50 A. L. R. 1081; 53 A. L. R. 1461; 66 A. L. R. 212; 124 A. L. R. 1309; 148 A. L. R. 1288.

It is clear that under the common law a covenant not to sue is different in legal effect from a release, in that where executed to one of two joint tort-feasors it does not release the other, though as to the first it leaves him in as good a position as to ultimate freedom from liability as if he had been expressly released. Such a meaning must be given to the language in the Code, § 20-909, "A covenant never to sue is equivalent to a release." The court did not err in sustaining the demurrer to paragraph 31 of the defendants' amendment to their plea and answer that the instrument executed to the taxicab driver constituted a release to the other joint tort-feasors.

The assignment of error on the judgment sustaining the demurrer to paragraph 30 of the defendants' amendment to their plea and answer, seeking to have the sum of $4000 paid by or on behalf of the taxicab driver applied in mitigation of the plaintiff's damages, raises the question whether or not, though the instrument here involved not be a release, the plaintiff may recover from the defendants the full amount of her damage or suffer a reduction to the extent of the $4000. The only ruling by the appellate courts of this State seems to be that in *Moore* v. *Smith*, supra, a negligence case, where it was held that "there is no obligation to credit the payment so made by one of the joint wrongdoers against the recovery had from the other wrongdoer." It is clear, however, that such a question was not raised in that case, the only issue in connection with the execution of the instrument under consideration being whether or not it constituted

a release of the other alleged tort-feasor. Consequently the ruling that a payment by one of two joint tort-feasors could not be pleaded in mitigation of damages is not binding upon us. In the *Moore* case the obiter ruling was arrived at by reasoning that the asserted liability never became a joint obligation by a judgment. We prefer now to base our ruling on the just principle that there should be but one satisfaction of a single injury. Stated otherwise, in a tort action, compensation, and not enrichment, is the basis for the award of damages. This principle of single satisfaction has been enunciated heretofore in cases where releases were involved, and it would seem to be no less applicable where, after receiving a given sum from one joint tort-feasor, and executing a covenant not to sue, the injured party proceeds against the remaining joint tort-feasor. In such a case the amount of damages should be reduced pro tanto. In *Donaldson v. Carmichael*, 102 *Ga.* 40, 42 (29 S. E. 135), it was said: "The universal and cardinal principle is, that the person injured shall receive a compensation commensurate with his loss or injury, and no more. 1 Sutherland on Damages, p. 27. This rule of course will be understood as not intended to embrace cases in which punitive or vindictive damages may be awarded, but as stating primarily the main object for which damages are awarded. The cause of action is the *damage* occasioned by the wrongful or negligent act of the defendant; if the act be done without damage, there is no injury to compensate; hence there can be no recovery. If there was damage by such act and the amount of such damage has been agreed on and paid, then it has been compensated. Although one be damaged by the joint act of two persons, there is but one injury; and if that is satisfied, the party injured is placed in as near his normal condition as the law can place him. There can be no double recovery of the amount of damage which one has sustained. It would be as reasonable to ask to recover from one defendant twice the amount of the damage sustained, as it is to ask from each of two defendants payment of the full amount of such damage even when the cause of action is good against both. The plaintiff is entitled to only one satisfaction; and if the manner of releasing one involves satisfaction in whole or in part of the claim, it will enure to the discharge, pro tanto, of all who are liable [citing]; and if a party

injured accept satisfaction from one of several joint tort-feasors, that is a bar as to all. . . Even if separate suits are brought against several who are guilty of a joint trespass, while each is liable for what has been done and may be separately pursued to final judgment, the plaintiff may elect which of the separate judgments he will enforce, but having received his damage recovered against any one, and his costs against all, he must be content with that; otherwise, he must receive more than one satisfaction for his injury." In a Georgia case, In re Kimbrough-Veasey Co., 292 Fed. 757, 758, Judge Sibley, after holding that in a mere agreement or covenant not to sue one debtor there is no discharge of the others, said "By the weight of authority, however, since the creditor is entitled to but one satisfaction, no matter how many persons may be bound to render it to him, any payment so made must be credited as against the other co-obligors. In the case of a principal and surety, however, though they are for many purposes joint obligors as respects the creditor (*Lumpkin* v. *Calloway*, 101 *Ga.* 226, 28 S. E. 622), as between themselves it is quite otherwise."

In 45 Am. Jur. p. 676, § 4, it is stated: "An injured person can have but one satisfaction for his injuries; and therefore the amount paid by the tort-feasor in whose favor the covenant not to sue was given will be regarded as a satisfaction pro tanto as to the joint tort-feasors." See also 53 C. J. 1253, § 76; Annotations in 104 A. L. R. 932, showing weight of authority to be to this effect.

It follows from the above that the court erred in sustaining the demurrer to paragraph 30 of the amendment to the defendants' plea and answer.

Counsel for the defendant in error call attention to the fact that the instrument executed by the plaintiff expressly stated that "This covenant not to sue is executed by the guardian on behalf of his ward, not in satisfaction of any damage sustained nor as compensation for injuries, nor in settlement of any claim for damages, and said money is paid and accepted as the consideration for the covenant not to sue the parties or either of them to whom the covenant flows." From this it is argued that it was not the intention of the plaintiff to receive the money as compensation for any damages. However, the instrument first

recites that the plaintiff, through her guardian, contracted not to bring any legal action or proceeding "for or on account of any injury or damage Janice Irene Ouzts may have sustained by virtue of or arising out of a collision" involved in the present action. Hence, despite the protestation above quoted, and though we recognize that this was an instance of one "buying his peace," the cold fact remains that the injury provoked the payment of the $4000, and that without it no such payment would have been made. Whatever terminology may have been used in the instrument we can not shut our eyes to the fact that the plaintiff has received this $4000 only because of her injury and damage and should not be permitted to collect it twice.

■ Under the evidence, jury questions were presented (a) as to whether or not the train was being operated within the City of Thomasville in excess of 20 miles per hour in violation of a city ordinance limiting the speed to that rate, which violation would be negligence per se; (b) as to whether or not after seeing the perilous position in which the plaintiff was placed as a passenger in the taxicab the engineer checked the speed of the train or made an effort to do so to avoid hitting the taxicab; and (c) as to whether or not the taxicab driver was negligent in attempting to cross the tracks with the train approaching and seen by him, and in following another car without maintaining an interval of distance sufficient to enable him to pass to the left or to the right of the other car if safety of his passenger so required. Whether or not the proximate cause of the plaintiff's injury was the negligence of the defendants or that of the taxicab driver or the concurring negligence of both in producing the plaintiff's injury was for the determination of the jury. These principles of law are established by the authorities we have cited in division 1 of this opinion as to the sufficiency of the petition as amended. Under the law and the evidence the jury was authorized to return a verdict in favor of the plaintiff, and the general grounds of the motion for new trial are without merit. Since, however, the result of the error of the court in sustaining the demurrer to paragraph 30 of the defendants' amendment to their plea and answer was that the jury, in fixing the amount of the plaintiff's damages, necessarily did not take into consideration the sum of $4000 which the plaintiff apparently concedes was paid by or on

behalf of the taxicab driver, who might reasonably have been found by the jury to have been a joint tort-feasor, direction is given that this amount of $4000 be written off the verdict for $40,000.

■ Special grounds 1 and 4 of the amended motion for new trial are not argued or insisted upon in the brief of counsel and must be treated as abandoned.

In special ground 2 error is assigned on the following charge of the court: "Gentlemen, damages are given as compensation for injuries done. Elements of damage where there is physical injury are pain and suffering, physical and mental, past and future, continuing injury to health and other physical conditions; loss of capacity to make a living." It is contended that the charge was error for the following reasons: (a) It was misleading and confusing to the jury because it authorized them to consider elements of damage twice or render a verdict for double damages. (b) The charge was erroneous as an abstract principle of law. (c) It was not elsewhere corrected in the charge of the court. In special ground 3 exception is taken to the following charge of the court: "The guide for fixing damages, if any, for pain and suffering, or diminished capacity to labor, as distinguished from earning capacity, is the enlightened consciences of impartial jurors, acting under the sanctity of their oath." It is contended that the charge was error for the following reasons: (a) It was misleading and confusing to the jury because it authorized them to consider elements of damage not authorized under the pleadings and evidence. (b) The charge, in conjunction with the charge hereinabove set out, authorized the jury to return a verdict for loss of earning capacity, which said element of damages was not contained in either the pleadings or evidence. (c) The charge was not elsewhere corrected in the charge of the court.

These two grounds were argued together in the brief of counsel and may appropriately be so considered here. The basis of the objection is that the court charged the jury as to recovery for loss of earnings as an element of pain and suffering when such question was not involved in the pleadings or evidence. Counsel for the plaintiff in error concede that the loss of capacity to labor is an element of pain and suffering, the guide for the

measurement of damages being only the enlightened consciences of impartial jurors, but that to authorize recovery for loss of earnings there must be some evidence of earnings before and after the injury, and that being absent here the charge was unauthorized and harmful error. We can not subscribe to the argument of counsel that the court's charges were harmful and confusing to the jury. While the first excerpt contained the expression "loss of capacity to make a living," the second excerpt shows plainly that it was instructing the jury as to diminished capacity to labor "as distinguished from earning capacity," and the court correctly stated that the guide for the measurement of damages is the enlightened consciences of impartial jurors, acting under the sanctity of their oath. This guide could not, of course, relate to loss of earning capacity. Manifestly the jurors could not reasonably be said to have received the impression that the court was instructing them that the plaintiff here, whom the evidence showed to be an eleven-year-old girl, was by her guardian seeking damages on account of loss of earnings. In *West* v. *Moore*, 44 *Ga. App.* 214 (2) (160 S. E. 811), is to be found a good statement of the difference between the award of damages because of loss of capacity to labor and the award of damages on account of pecuniary losses or of "earning capacity." It was there said: "In an action for personal injuries, permanent diminution of capacity to labor is an element of damages for consideration by the jury in determining the amount of the recovery, along with evidence as to pain, suffering, disfigurement, or the like, though no pecuniary loss be shown (*Powell* v. *Augusta &c. Ry. Co.*, supra [77 *Ga.* 192, 200]; *City Council of Augusta* v. *Owens*, 111 *Ga.* 464 (8), 479, 36 S. E. 830; *Atlanta Street R. Co.* v. *Jacobs*, 88 *Ga.* 647, 652, 15 S. E. 825), since mental pain and suffering may follow from a consciousness of the existence of a permanently impaired capacity to labor, and for the measurement of such element of damages there is no standard but the enlightened consciences of impartial jurors. But, 'if a plaintiff seeks to recover for *pecuniary* losses resulting from lost time or permanent diminution of capacity to labor and earn money, he should introduce evidence on which to predicate such a recovery.' *Atlanta & West Point R. Co.* v. *Haralson*, 133 *Ga.* 231 (4), 235 (65 S. E. 437)." The charges here were not subject to any of the criticism of the motion.

Nothing herein stated is to be taken as indicating an opinion that the loss of capacity to "make a living" is different in law from the loss of capacity "to labor," as is usually referred to as being an element of pain and suffering rather than loss of earnings requiring proof. We merely hold that if there be a distinction in meaning, the jury could not, where as here an eleven-year-old child was involved, have reasonably understood the court to be referring to loss of earnings, rather than to loss of capacity to labor, as pointed out in the second excerpt, where no proof of earnings is required.

For reasons stated in division 3 of this opinion, direction is given that the sum of $4000 be written off the verdict for $40,000; otherwise, the judgment stands reversed.

*Judgment affirmed in part and reversed in part with direction. MacIntyre, P. J., and Townsend, J., concur.*