41798. TRICE, Administrator v. WILSON.

ARGUED FEBRUARY 9, 1966—DECIDED MAY 6, 1966—
REHEARING DENIED MAY 25, 1966—

*Harry A. Crawley,* for appellant.

*Owen J. Adams,* for appellee.

JORDAN, Judge. This is a case of first impression in this State and we have found but two cases from other jurisdictions in point. In Pickwick v. McCauliff, 193 Mass. 70 (78 NE 730), the Supreme Judicial Court of Massachusetts in a 1906 decision held that the principle of law that the release of one joint tortfeasor operates as a bar to recovery against other joint tortfeasors has no application in a case such as this since the Commonwealth or State was not legally answerable in tort to the plaintiff under the doctrine of sovereign immunity. The court in that case stated that, "What was received by the plaintiff from the commonwealth must be regarded therefore as in the nature of a gift or gratuity and not as something paid in satisfaction of an injury for which it was or might be liable according to established rules of law or of a claim made upon it by the plaintiff."

The Supreme Court of Tennessee in a 1961 decision (Schoenly v. Nashville Speedways, Inc., 208 Tenn. 107 (344 SW2d 349)), held on the other hand that an award of damages by the State Board of Claims to a party injured by the joint and concurrent negligence of a State employee and other defendants had the effect of a judgment of a court of law and that the payment of such award or judgment constituted a satisfaction of the plaintiff's claim and precluded the plaintiff from proceeding against the joint tortfeasors. The court in its opinion stated as follows: "It seems clear that since the State's employee Graham was a joint tort-feasor with defendants and that the State, but for its immunity from suit as a sovereign, would have also been jointly and severally liable with the others upon the doctrine of *respondeat superior;* and that since the Board of Claims allowed plaintiff compensation for his injuries, which was paid, that this was a satisfaction of his claim and a discharge of the other

joint tort-feasors, as held by the learned Trial Judge."

It is contended here by the defendant appellant that since Resolution Act No. 241 of the General Assembly recited that the payment to the plaintiff provided for therein "shall be in full and final satisfaction for any claim against the State arising as a result of the collision described and set forth in this Resolution," the plaintiff's acceptance of same constituted a release of the State and that by operation of law the defendant was also released from any liability arising out of the same collision under the principle of law that the release of one of several joint tort-feasors extinguishes the plaintiff's cause of action and relieves all jointly liable thereon. The plaintiff appellee contends on the other hand in accord with the decision of the Massachusetts court that since the State was not legally liable to the plaintiff because of the doctrine of sovereign immunity, its payment of compensation to her was purely voluntary and constituted a gift or gratuity which would not enure to the benefit of the defendant in any way.

■ The plaintiff is correct in her contention that the State was not legally answerable in tort for the negligence of its employee. The State of Georgia has never renounced its sovereign immunity from liability for the negligent or other tortious acts or conduct of its officers, agents or employees, and has not consented to be sued therefor. *Roberts v. Barwick,* 187 Ga. 691 (1 SE2d 713); *National Dist. Co. v. Oxford,* 103 Ga. App. 72 (118 SE2d 274). The injured party must look to the legislature and not the courts (*Georgia Military Institute v. Simpson,* 31 Ga. 273, 277), the payment of compensation to persons so injured being purely a matter of legislative grace based upon a strong moral obligation and equitable duty and not upon the assumption of legal liability. 172 ALR 1407.

The State in recognition of its responsibilities in this regard has created a Claims Advisory Board (Ga. L. 1963, p. 624; *Code Ann.* §§ 47-504—47-510), the function of which is to receive notice of claims against the State, investigate them, hold hearings if necessary, and prepare statements of its findings, its determination of the merits of such claims and its recommendation as to the payment of the same for transmittal to the legis-

lature of this State. The law specifically provides, however, that the recommendations of this board shall be advisory only and are not binding in any way on the legislature in whose absolute discretion and good faith the ultimate determination of a claim rests.

The Claims Advisory Board is not, therefore, comparable to the Tennessee Board of Claims which is under a statutory duty to make no award or settlement "unless the facts found by said board of claims establish such a case of liability on the part of a department or agency of the State government as would entitle the claimant to a judgment in an action at law, if the State were amenable to such," (Tennessee Code Annotated § 9-812); but whose awards when made are supposed to constitute fair and adequate compensation for a claimant's injuries, and whose determinations have the finality of a judgment of a court of law. Schoenly v. Nashville Speedways, Inc., 208 Tenn. 107, supra.

Thus, while the State of Tennessee, like Georgia, has not renounced its sovereign immunity from suit, Tennessee, unlike Georgia, has established by statutory enactment a quasi-judicial body to determine and award fair and adequate compensation to injured parties. The legislature of this State has created no statutory guidelines to insure that fair and adequate compensation is paid to injured parties; its award of compensation is, as stated above, absolutely discretionary, ex parte in its determination, and based upon the State's moral obligation to answer for the torts of its employees and not upon any legal duty.

Under these circumstances, since the State was not jointly liable with its employee, the defendant's intestate, for the damages sustained by the plaintiff and since the State has not established any statutory guidelines to insure that parties in the position of the plaintiff receive fair and adequate compensation for their injuries, it is our opinion that, as contended by the plaintiff, the legal principle that the release of one of several joint tortfeasors extinguishes the plaintiff's cause of action and relieves all jointly liable thereon has no application here; and that the plaintiff's acceptance of whatever compensation the legislature chose to award her did not ipso facto constitute the full satisfaction of the damages sustained by her as a result of the negli-

gence of the defendant's intestate so as to extinguish her cause of action and bar the prosecution of this suit against the defendant. Indeed, the Resolution of the General Assembly under which the award was made, showed on its face that it was not intended as full compensation for the damages sustained by the plaintiff since it was recited therein that the present cash value of her husband's life was $39,227; yet only $12,500 was awarded to the plaintiff as damages for the wrongful death of her husband, the remaining compensation being awarded for items of damages which are not included in this action. The trial court did not err therefore in overruling the defendant's plea in bar.

■ The legislature of this State is under a constitutional mandate to make no donation or gratuity in favor of any person, corporation or association (Art. VII, Sec. I, Par. II of the Constitution; *Code Ann.* § 2-5402); and it is our opinion that, contrary to the contention of the plaintiff, it cannot be said that the compensation awarded to her was merely a gift or gratuity and made in violation of the Constitution of this State. Clearly, such award was intended as payment in part to the plaintiff for damages actually sustained by her as the proximate result of the tortious misconduct of a State employee committed in the course of his employment and was founded upon the strong moral obligation of the State to answer for such damages under the doctrine of respondeat superior. Accordingly, while the award was voluntary in the sense that it was not legally compellable under existing law, it was based upon a good consideration and was not merely a gift or gratuity.

This being true, it is our opinion that the amount of compensation awarded to the plaintiff as damages for her injuries, could enure to the benefit of the defendant in this action under proper pleadings. "[I]n a tort action, compensation, and not enrichment, is the basis for the award of damages." *Atlantic C. L. R. Co. v. Ouzts,* 82 Ga. App. 36 (3), 58 (60 SE2d 770). "There can be no double recovery of the amount of damage which one has sustained. . . As was said by the court in Lovejoy v. Murray, 3 Wall. 1, when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience that

the law will not permit him to recover again for the same damage." *Donaldson v. Carmichael,* 102 Ga. 40, 42 (29 SE 135). Under the *Donaldson* case, the plaintiff upon the principles of equity and good conscience is not entitled to recover twice for the same damages, and since the compensation awarded the plaintiff by the State was clearly intended to compensate her in part for the same damages which she is seeking to recover in this action, the defendant could plead the payment of same in reduction or avoidance of the plaintiff's right of recovery but not as an absolute bar to her right of action. It would thus be a question for the jury's determination, in the event they found for the plaintiff, as to whether or not the plaintiff was entitled to additional remuneration from the defendant in order to be fully compensated for the wrongful death of her husband. The situation presented here is in this respect comparable to that arising out of the execution of a covenant not to sue one of two joint tortfeasors which does not constitute a release of the other tortfeasor, "and does not bar a proceeding against him, but any sum received from the first may be pleaded and proved in reduction of the amount of damages to be awarded by the jury." *Atlantic C. L. R. Co. v. Ouzts,* 82 Ga. App. 36 (2), supra.

■ Digressing from the merits of this case and speaking only for the writer, the doctrine of sovereign immunity needs to be re-examined in the light of present day realism. This theory that the "King can do no wrong" is a descendant of the common law which has outlived any usefulness that it might have had or the purposes which inspired it. It had its origin in England at a time when the sovereign could hardly do any wrong simply because the sovereign engaged in very few, if any, activities likely to incur wrong or injury to its subjects. Not so, however, in the age in which we now live, for all units of government today are big business. The State of Georgia perhaps owns and operates on the highways of this State more vehicles and equipment than the largest corporations. The activities of its employees and agents daily and constantly touch and affect the life of every citizen of the State. Under such conditions the only realistic approach to the problem, (which will continue to grow) is for the State and its subdivisions to abandon this con-

723

cept of sovereign immunity in favor of a Torts Claim Act or similar legislation permitting lawsuits in favor of those damaged or injured by such activities. Under such procedure the State, if a wrongdoer, could be brought into the courts as an adversary rather than merely dispensing legislative grace to its citizens in an ex parte proceeding under the present system. If the State could be made a party litigant, principles applicable to all tortfeasors or joint tortfeasors could be applied, and needless to say under such circumstances, this court would not have been presented with the novel question which we here pass upon. A similar suggestion was made by Chief Justice Duckworth some 27 years ago in *Roberts v. Barwick,* 187 Ga. 691, supra, where he pointed out that such could be brought about only by legislative action.

*Judgment affirmed. Felton, C. J., Nichols, P. J., and Frankum, J., concur. Pannell, J., concurs specially. Bell, P. J., concurs in the judgment only. Hall, Eberhardt, and Deen, JJ., dissent.*

PANNELL, Judge, concurring specially. I concur in the result reached in both Divisions 1 and 2 of the opinion. It is my opinion, however, that it is immaterial in reaching the decision in this case whether or not the payment by the State was a gratuity or whether it was based upon a strong moral obligation. In neither event is any waiver of sovereign immunity or assumption of liability shown by the State; and even if a gratuity, the payment thereof *upon the tort* was sufficient to authorize a credit therefor upon the obligation asserted against the administrator of the estate of the tortfeasor, a former employee of the State.

BELL, Presiding Judge, concurring in the judgment only. While I concur in the holding in Division 1 of the majority opinion which states that "the legal principle that the release of one of several joint tortfeasors extinguishes the plaintiff's cause of action and relieves all jointly liable thereon has no application here," I disagree with much of the reasoning by which the majority reaches that view. I differ, for instance, with the majority's statement that the State's "payment of compensation to persons so injured [by the tortious acts of State agents while about the governmental functions of the State] is purely a matter

of legislative grace based upon a strong moral obligation and equitable duty and not upon the assumption of legal liability." Firstly, I disagree because that statement lends credence, if not positive approval, to the appropriation of public funds for a purpose which I consider to be nothing more than a donation or gratuity in favor of an individual. The payment, therefore, can have no legal significance.

Secondly, I disapprove the implication of the majority that the Act of the legislature is given legal worth because it is "based upon a strong moral obligation and equitable duty," which in Division 2, the majority inconsistently recognizes as forming "a good consideration" transforming the appropriation out of the stigma of a mere "gift or gratuity." This statement appears to have been provoked by *Code* § 20-303 which, obviously, is inapplicable here because it pertains to contracts and not to torts. Further, the denotation placed on the words "strong moral obligation" by the majority has been precluded by the Supreme Court which has defined these words in *Code* § 20-303 as meaning, "the strong moral obligation here referred to seems to be one supported either by some antecedent legal obligation, though unenforceable at the time, or by some present equitable duty." *Davis & Co. v. Morgan,* 117 Ga. 504, 507 (43 SE 732), followed in *Hobbs v. Clark,* 221 Ga. 558, 559 (146 SE2d 271). In this case, the appropriation by the General Assembly of the money the nature of which is in issue in this case, is a transfer of funds voluntarily made without consideration and for which there is no antecedent legal obligation or any duty, equitable or lawful.

There is no obligation whatsoever on the legislature demanding the passing of appropriations paying claims such as this. Legislative accord or legislative grace is the only rule. Legislative accord in this and like instances is not predicated on the rights of the citizenry as a whole or as a class. There are no guidelines. Payments of appropriations made in that vein can only be donations or gratuities and of no legal consequence in judicial actions between private litigants such as the case before us. They can have no place either in the pleadings of a party or in evidence.

■ All the more do I disagree with the views expressed by

Judge Eberhardt in his dissent. He would apply to plaintiff's acceptance of the gratuity the drastic legal effect of an absolute bar to her action and would thereby relegate the State to the position of a common joint tortfeasor. The State is not a joint tortfeasor, for it cannot be sued. A joint tortfeasor can be sued. *Gooch v. Georgia Marble Co.*, 151 Ga. 462 (107 SE 47). Further, either one, some, or all of joint tortfeasors may be sued and where one of several only is sued, recovery for the entire injury may be had without diminution because of the concurring negligence of those not sued. *Terry v. Central of Ga. R. Co.*, 108 Ga. App. 204 (132 SE2d 573). The State cannot be sued. It has not given its express consent. "The State cannot by the courts be required to submit to being sued against its express consent." *Roberts v. Barwick*, 187 Ga. 691, 694 (1 SE2d 713).

The so-called distinction "between sovereign immunity from suit and sovereign immunity from liability" to which Judge Eberhardt refers does not mean, as he implies, that the State is as liable as any tortfeasor for the torts of its agents but is merely exempted from paying judgments because the State cannot be sued. The fact is that the case he cites does not support his view but on the contrary, refutes it by holding that in addition to an immunity from suit the State also has an immunity from liability and it is therefore necessary for the latter immunity to be waived before a valid judgment for a tort can be entered against the State. That case holds that a mere waiver by the State to be sued is not enough. Manion v. State, 303 Mich. 1 (5 NW2d 527 (3-5), 528). To the like effect see Smith v. State of New York, 227 N.Y. 405, 409 (125 NE 841, 842). Under those cases, the State cannot be a joint tortfeasor as it has an immunity from liability. Under that theory a State cannot become a joint tortfeasor until it has given its express consent (1) to be sued and (2) to be subjected to liability. Where neither of those things has been waived, as in Georgia, the State cannot possibly be relegated to the status of a joint tortfeasor.

Since the State is not a joint tortfeasor, the release by the plaintiff here to the State cannot be a release of a joint tortfeasor releasing all other joint tortfeasors. That release is not a contract, but is mere nudum pactum. The acceptance by the

plaintiff of the legislative grant amounts to nothing more than the acceptance of a gift or a gratuity. As that, it has no legal significance and cannot be pleaded, introduced in evidence, or pleaded as a bar to the recipient's action.

I also think Judge Eberhardt's dissent evades the issue. The issue we are asked to decide is whether the payment to plaintiff is or is not a gratuity. That is a matter of law falling within the jurisdiction of this court. We are asked to rule upon that point which is the end result of a statute as a matter of law. That we have the jurisdiction to do and the consequent duty to fulfill. We are not asked to construe the constitutionality of the legislative Act and to declare it unconstitutional. There is quite a difference in ruling upon the legal significance of the end result of a legislative enactment and construing its constitutionality. We have the jurisdiction and the duty to perform the former which is all that the issue in this case presents. This case is a civil case between private litigants. The issue is as to which one of the private litigants shall receive the benefit of the legislative bounty. The nature of that bounty determines the issue. I think we should call it what it is. To say that we cannot declare this payment to this plaintiff to be a gratuity as that would amount to a holding that the statute authorizing it is unconstitutional since the Constitution prohibits legislative gratuities, is refining legal technicality to its excess.

■ The views of the majority pose numerous difficulties. Example: What effect does the resolution's declaration of the value of the deceased's life have? Is that declaration conclusive on the jury? Is that declaration even admissible in evidence? Does it have probative value? Is the General Assembly as the legislative branch of government authorized to sit, in effect, as a jury and determine these matters, in whole or in part, and by its action preclude to any degree the judicial process? Is the jury bound, or authorized, to mitigate damages by the amount appropriated and paid? May the jury refuse to mitigate the damages by the amount paid?

The views of the dissent also forecast difficulties. Example: Would the grantee of the appropriation have been permitted to delay acceptance of the payment until after litigating her case

to finality? After that could she have been denied payment of the legislative grant?

■ Since the judgment of the majority is that the trial judge did not err in overruling the defendant's plea in bar which is in harmony with the views expressed here, I concur in that judgment.

EBERHARDT, Judge, dissenting in part. Because of the language of the Resolution of the General Assembly under which payment was made, and the acceptance of the payment thereunder, I must dissent from the judgment insofar as it holds that no bar resulted as to any action against the driver of the highway truck, a joint tortfeasor.

The Resolution specifically provided that the payment to plaintiff-appellee of $14,956.50 ($12,500 for the value of the life of the plaintiff's deceased husband, $855 as damages to his truck, $566.20 for hospital and doctor bills incurred, and $1,035.30 funeral expense) was to be "in full and final satisfaction for any claim against the State arising as a result of the collision." Payment of that sum was tendered and accepted under the Resolution.

The widow now seeks to recover the value of the life of her deceased husband from the administrator of the estate of the driver of the highway truck, with which her husband had collided while driving his own truck on the highway. Negligence on the part of the driver of the highway truck is alleged.

While there was no written release executed by Mrs. Jones when she accepted the payment, it is inescapable that the acceptance of the money carried with it acceptance of the condition incorporated in the Resolution that it be in full and final satisfaction of any claim she might have against the State. Restatement, Contracts, § 421 (1932); 1 CJS 482, Accord & Satisfaction, § 12; Prosser on Torts (3rd Ed.) 268; *Pennsylvania Threshermen &c. Mut. Ins. Co. v. Hill,* 113 Ga. App. 283 (148 SE2d 83). "[P]ayment being made upon condition, the acceptance of the payment carries with it the acceptance of the condition." *Citizens & Sou. Bnk. v. Union Warehouse &c. Co.,* 157 Ga. 434, 453 (122 SE 327).

It is contended that the payment by the State was a mere gratuity, since no legal liability existed on its part for the negligence of its employee in negligently operating the highway

truck, and that for this reason the payment did not and could not amount to an accord and satisfaction as to the claim of Mrs. Jones against the driver of the truck. See *N. C. & St. L. R. Co. v. Miller*, 120 Ga. 453, 455 (47 SE 959); *Western & A. R. Co. v. Sellers*, 15 Ga. App. 369 (2) (83 SE 445). But "There is a distinction between sovereign immunity from suit and sovereign immunity from liability. The latter exists when the sovereign is engaged in a governmental function. The former may be waived without a waiver of the latter." Manion v. State, 303 Mich. 1 (5 NW2d 527). The construction and maintenance of roads and highways is generally held to be a proprietary rather than a governmental function. Thus there exists here an immunity from suit, because the function was performed by the sovereign.

Further, we have the statute which authorized the payment that was made to Mrs. Jones. See *Code Ann.* § 47-504 et seq. If we hold the payment to have been a gratuity it amounts to a holding that this statute is unconstitutional, for gratuities are prohibited. Constitution of 1945, Art. VII, Sec. I, Par. II (*Code Ann.* § 2-5402). We have no power to hold the statute unconstitutional; only the Supreme Court could do that. Our duty is to treat and construe the law authorizing the payment to be constitutional until its unconstitutionality has been declared by the Supreme Court. Consequently, we must regard the payment as an authorized and lawful settlement of the plaintiff's claim against the State.

Having accepted the payment in full and final satisfaction, she surrendered her cause of action against the truck driver and she is now barred from bringing this action. *Donaldson v. Carmichael*, 102 Ga. 40 (29 SE 135); *Friedlander v. Feinberg*, 27 Ga. App. 808 (2) (110 SE 26); *Griffin Hosiery Mills v. United Hosiery Mills*, 31 Ga. App. 450 (120 SE 789); *Allen v. Landers*, 39 Ga. App. 264 (146 SE 794); *Edmondson v. Hancock*, 40 Ga. App. 587, 591 (151 SE 114); *Caplan v. Caplan*, 62 Ga. App. 577, 579 (9 SE2d 96).

"It seems clear that since the State's employee Graham was a joint tort-feasor with defendants and that the State, but for its immunity from suit as a sovereign, would have also been

jointly and severally liable with the others upon the doctrine of respondeat superior; and that since the Board of Claims allowed plaintiff compensation for his injuries, which was paid, that this was a satisfaction of his claim and a discharge of the other joint tort-feasors." Schoenly v. Nashville Speedways, Inc., 208 Tenn. 107 (344 SW2d 349).

I am authorized to say the Judges Hall and Deen concur in this dissent.